# Staunton.

## DIDIER AND OTHERS V. PATTERSON AND OTHERS.

### SEPTEMBER 17, 1896.

1. ASSIGNMENTS—*Future Advances—Absolute Assignment—Mortgage—Reservation of Surplus—Fraud in Law and Fraud in Fact.*—A chose in action may be assigned as a security for an existing debt, and also for future advances. Although the assignment is absolute and unconditional in its terms, it may be shown by parol to be a mere security for a debt. If the assignment is made in good faith to secure an existing debt and future advances, the mere fact that the assignor is allowed to check on the assignee, which is a bank, for the surplus after paying the amount for which the assignment was made, will not vitiate the assignment. Taking an absolute assignment as a security for a debt is a mere badge of fraud which may be repelled by evidence showing the *bona fides* of the transaction. For distinction between fraud in law and fraud in fact see opinion.

2. ASSIGMENTS—*Inconsistent Reservations.*—If an insolvent debtor makes an assignment of all of his property for the benefit of his creditors, reserving benefits to himself at the expense of his creditors, the assignment will be set aside as fraudulent and void, but this rule has no application to an assignment by a debtor of a part only of his estate, made in good faith for the purpose of raising money or securing existing creditors, reserving the surplus to himself. The law would imply such reservation.

3. ATTACHMENTS—*Non-residents.*—One who has dwelt in the State for a year or more and is still dwelling here, with no intention of leaving; who is engaged in constructing public improvements in a city in this State, under a contract that will occupy him for an indefinite period; who is a registered voter in said city and has done other acts evincing his residence in said city, cannot be said to be a non-resident' of the State within the meaning of the attachment laws, although his family lives out of the State for the convenient education of his children at special schools.

Argued at Wytheville.    Decided at Staunton.

Appeal from a decree of the Corporation Court of the city of Roanoke, pronounced April 1, 1893, in a suit in chancery wherein the appellants were the complainants, and the appellees were the defendants.

*Affirmed.*

The above mentioned decree was pronounced in two chancery suits heard together, but which the petition for appeal says were consolidated. The object of the suits was to set aside, as fraudulent, an assignment made by W. F. Patterson, to the Fidelity Loan and Trust Company, of Roanoke city, and to attach the debt assigned and any other property of said Patterson for complainants' debts. The bills charged that Patterson was not a resident of the State. The evidence is stated in the opinion.

*Scott & Staples, R. Randolph Hicks* and *John M. Hart,* for the appellants.

*Watts, Robertson & Robertson,* for the appellees.

Riely, J., delivered the opinion of the court.

· An intent on the part of a debtor, in making a conveyance or transfer of his property, to delay, hinder, or defraud his creditors, renders the conveyance or transfer void as to them, except as against a purchaser for valuable consideration and without notice of the fraud. This is the case both by the common law and under the statute. Wait on Fraud. Con., sec. 16; and the Code of Va., sec. 2458.

Fraud may appear from the provisions of the instrument itself, or be proved by evidence *aliunde.* Whenever it is apparent on the face of the instrument, it is called constructive or legal fraud; and in such case, the fraud is adjudged by the law to be conclusively established by the provisions of the conveyance itself, and cannot be disproved by other evidence.

*Gordon et als.* v. *Cannon et als.*, 18 Gratt. 387; *Hughes, Effinger & Co.* v. *Epling, ante* p. 424; and Bump on Fraud. Con. (4th Edit.), section 338. But mere badges of fraud, whether they appear on the face of the instrument or from evidence *aliunde,* may always be repelled by other evidence. *Gordon et als.* v. *Cannon et als., supra;* and *Hickman's Ex'or* v. *Trout,* 83 Va. 478.

While an instrument which is fraudulent on its face is conclusive of the question of fraud, and the contrary cannot be shown by extrinsic evidence, no appearance of fairness on the face of a conveyance, if executed with a fraudulent intent, will exclude evidence of the fraud (1 Greenleaf on Ev., section 284; 2 Minor's Inst., 336 and 690; and *Stark's Ex'ors* v. *Littlepage,* 4 Rand. 368), or give validity to the conveyance, if it be proved to be fraudulent.

An instrument, which on its face is an absolute convey-ance, may be shown by evidence *aliunde* to be in fact a mort-gage, or only a security for a debt, or for money lent. Taking an absolute conveyance as a security for a debt or for money lent is not, however, conclusive evidence of fraud. It is only a badge of fraud, and if it be shown that there was no fraud in taking the security, it will be held to be valid and be en-forced. Wait on Fraud. Con., section 238; Bump on Fraud. Con., section 55; and *Oriental Bank* v. *Haskins,* 3 Metc. (Mass.) 332.

The instrument, which it is here sought to impeach on the ground of fraud, is an assignment made by W. F. Patterson on December 17, 1892, to the Fidelity Loan and Trust Com-pany of Roanoke city, of all moneys due and to become due to him from the said city for work done and materials fur-nished, and to be done and furnished, under his contracts with the city for public improvements. On its face, it is an absolute conveyance and no unfairness is disclosed by its provisions. But while on its face it is an absolute convey-ance, the testimony shows that it was only intended as a se-

curity for moneys already borrowed by Patterson from the said Company to enable him to carry on the work under his contracts with the city, and for future loans or advances to be made to him for the same purpose.

The testimony shows that the assignment was free from any intentional fraud. This, indeed, was conceded, but it was claimed by the counsel for the appellants that the effect of the agreement was nevertheless such as to constitute fraud in law

One may not only convey or transfer a chose in action or any other property to secure an existing indebtedness, but it is also well settled that he may likewise do so for the purpose of securing future loans and advances. *Alexandria Savings Institution et als.* v. *Thomas et als.* 29 Gratt. 483; *U. S.* v. *Hooe,* 3 Cranch, 89; *Shirras et als.* v. *Caig & Mitchell,* 7 Cranch, 34; *Lawrence* v. *Tucker,* 23 How. 14; Wait on Fraud. Con., sec. 217; and Bump on Fraud. Con., sec. 210.

The evidence discloses that Patterson had undertaken large contracts with the city of Roanoke for public improvements, and that the city was to pay monthly for the work as estimated by its engineer, less ten *per cent.,* which amount was to be reserved until the work was completed and accepted by the city, in order to insure the faithful performance of his contracts. The work required a large and continuous expenditure of money for machinery, materials, and labor, which necessitated some arrangement, especially in consequence of the amount reserved by the city until the completion of the work, by which Patterson could command sufficient means for these purposes and prevent delays and disaster.

He had been at work under his contracts for several months prior to the execution of the assignment which is the subject of this controversy, and at first obtained from the bank the moneys he needed upon notes endorsed by J. A. McConnell and discounted by it. Subsequently, additional security being required for the moneys he was borrowing

from the bank, he assigned to it on October 12, 1892, the moneys payable on the monthly estimates for September and October, 1892, for work done. It collected the same and placed it to his credit, and charged up to him his notes as they became due.

During the month of December, 1892, Patterson had needed and the bank had lent to him more money than would be coming to him upon the estimate for that month, and it asked for additional security. Accordingly, he made to it the assignment of December 17, 1892. This was intended to secure not only what he then owed the bank, but also future loans or advances. In addition to securing his existing indebtedness to it, the understanding and agreement was that it would continue to lend or advance to him money to carry on the said work, taking his notes therefor payable on the pay-day of the city, which was the fifteenth of each month; collect and place to his credit the amount due according to the monthly estimates; charge up to him his notes which were then payable; and hold the balance or surplus, if any, subject to his check.

The right to check upon or use such balance or surplus is the matter relied upon to avoid the assignment as fraudulent in law. It was insisted that it violated the principle of law that the grantor or assignor in a conveyance or assignment, cannot reserve any benefit to himself under the conveyance or assignment, or make any stipulation in his own favor which is inconsistent with its absolute character. Bump on Fraud. Con., sec. 377; Wait on Fraud. Con., sec. 326; and 2 Minor's Inst., 679.

While the law condemns and declares fraudulent and void a conveyance under which any pecuniary benefit is reserved by the debtor, this principle applies to the case of a general assignment by an insolvent debtor of all his estate for the benefit of his creditors, or where such benefit is an object of the conveyance and is reserved for the use of the

debtor at the expense of his creditors; where the intent is to screen the property from them, and prevent it from being taken for his debts. It does not apply where the conveyance is of a part only of the estate of the debtor, and was made in good faith for the purpose of raising money or securing one or more creditors, and the reservation is incidental, and what the law would imply in the absence of such a provision. Bump on Fraud. Con., sec. 383; *Leitch* v. *Hollister,* 4 N. Y. 211; *Curtis* v. *Leavitt,* 15 N. Y. 9; and *Baldwin* v. *Peet,* 75 Amer. Dec. 806.

The case under consideration, as disclosed by the evidence, does not violate this principle. It was not an assignment by a debtor in failing circumstances for the benefit of his creditors generally, nor an assignment of all his estate; but simply an assignment of a chose in action—of the money due and to become due for work Patterson had contracted to perform—for the express purpose of raising the necessary .funds to carry it on and meet his liabilities. There was no reservation of benefit in the sense contemplated by the principle of law referred to. The evidence discloses no purpose to shield from his creditors any of the money to which the Fidelity Loan and Trust Company would not become entitled under the agreement, or to prevent it from being subjected to the payment of any debts he might owe or incur. It was only the reservation of the balance of the monthly collection from the city which might remain after discharging the amount then due and payable to the bank. Such a provision, or reservation if it may be so called, in nowise defeated or tended to defeat the purpose of the assignment, or to withdraw the security from its operation. The bank would receive payment of its debt, and the balance would be liable for any other debts of the assignor—to be reached, according to its nature, either by execution or bill in equity, as well as be subject to his check for his own use. No party to the assignment falsely claimed or pretended that the as-

signment was anything more than a security for existing indebtedness, and for loans or advances to be made in the future; nor concealed, or attempted to conceal its real purpose and character; nor was there shown any agreement or purpose to conceal such surplus from creditors.

Actual fraud not being shown, the result is the same as if it had been provided in the assignment in terms that the moneys due upon the monthly estimates should be applied by the assignee, when collected, to the payment of the indebtedness of Patterson to it, and the balance, if any, paid over to him. The effect of such provision would only be what the law would imply without it. The surplus would equally go to him under the law without such provision as well as with it. Such a stipulation does not vitiate the conveyance or assignment. *Harvey* v. *Anderson, et al.* 24 S. E. 914; *Dance* v. *Seaman,* 11 Gratt. 778; *Skipwith's Ex'r.* v. *Cunningham,* 8 Leigh 271; Bump on Fraud. Con. (4th Ed.) section 383; and Wait on Fraud. Con. (2nd Ed.) section 327.

From the moneys Patterson had obtained from the company prior to the assignment in question, he had regularly paid the expenses and liabilities incurred by him in the prosecution of the work he had undertaken to perform for the city. He had regularly and promptly paid month after month, at the time of the collection of the amount due him from the city or within a few days thereafter, the amounts due from him to his employees, and also to the appellants to whom he had sublet a part of the work. And he had done this notwithstanding the assignment made of the amounts due under the estimates for the months of September and October, so that nothing was due to the appellants when the assignment of December 17, 1892 was made, nor would be due until the next pay-day, the 15th of January following, except perhaps a small sum to one of them for extra work, which had been overlooked in past settlements.

Patterson had paid the appellants in their monthly settle-

ments by checks on the Fidelity Loan and Trust Company, and they knew that it was with it that he made his deposits and kept his bank account. They were cognizant of the previous arrangement he had with it for getting money to carry on his operations, and of the assignment of October 12, 1892. They neither complained, nor had cause to complain of it. Neither have they just cause to complain of the assignment of December 17, 1892, nor good ground for essaying to impeach it.

Nor was Patterson a non-resident of the State, so that the plaintiffs might lawfully sue out attachments against his estate. Although his family lived in Washington city in order that his children could be educated at its schools, he himself had dwelt for a year or more at Roanoke city and was still dwelling there, amenable to the service of legal process, when the attachments were sued out, with no intention of leaving, being engaged in constructing public improvements under contracts with the city that would occupy him for an indefinite period. He had registered as a voter in the month of May preceding, and done many other acts evidencing his residence at Roanoke city. Under a like state of facts, it was held by this court in *Long* v. *Ryan*, 30 Gratt. 718, that a party, who like Patterson, was a contractor, was not a non-resident of the State within the meaning of the attachment law; and under the principles there laid down, the like conclusion must follow in this case.

There is no error in the decree of the Hustings Court, and it must be affirmed.

*Affirmed.*