Opinion.

## Wytheville.

GRAY, ASSIGNEE, v. ATLANTIC TRUST AND DEPOSIT COMPANY, INC.

June 13, 1912.

Absent, Keith, P.

1. FRAUDULENT CONVEYANCES—*Actual Fraud—Fraud in Law.*—To hold a mortgage or deed of trust fraudulent in law, it is not necessary to impute actual or intentional fraud to the grantor, the trustee, or any one concerned. The provisions of the instrument may be of such character as of themselves to furnish evidence sufficient to justify the inference of fraudulent intent.

2. FRAUDULENT CONVEYANCES—*Reservation Inconsistent with Grant—Fraud Per Se.*—A deed conveying a stock of goods, though designated as an exhibit, to a trustee, to secure a debt, reserving to the grantor the right to remain in the quiet possession of the goods, and take the profit thereof to his own use until default is made in the payment of the debt secured, reserves to the grantor power over the goods incompatible with the avowed purposes of the trust, and adequate to its defeat, and hence is fraudulent *per se.*

Appeal from a decree of the Court of Law and Chancery of the city of Norfolk. Decree for the defendants. Complainant appeals.

*Reversed.*

The opinion states the case.

*Morris, Garnett & Cotten,* for the appellant.

*Jeffries, Wolcott, Wolcott & Lankford,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

The controlling question to be decided in this case is whether or not the deed of trust, the validity of which is attacked by appellant, is fraudulent *per se.*

During the year 1907 an exposition, known as the Jamestown Ter-Centennial Exposition, was held in or near the city of Norfolk, Va., and, incident to the operation of the said exposition, one C. M. Rosenthal, a non-resident of the State, came to Norfolk, and leased a certain space in one of the buildings of the exposition company, for the purpose of conducting therein what was termed the "Austrian Exhibit." Pursuant to his purpose, Rosenthal purchased of several business concerns of New York City large quantities of crockery, china, glass-ware, and other fancy articles made of china and glass, such purchases being made by Rosenthal on credit, and among them a large bill of goods from the firm of Lazarus, Rosenfeld & Leyman, the assignors of appellant, Gray, amounting to $1,639.32, which sum Rosenthal neglected to pay.

With the stock of china, glass-ware, and fancy goods, etc., acquired by Rosenthal to make up his "Austrian Exhibit," he proceeded to establish an imposing place of business in the building of the exposition company, occupying the space in the building set apart to him, employing a force of clerks, and proceeded to dispose of his supply of goods, etc., as is usually done in the conduct of a retail store or other mercantile business, replacing the articles sold with others bought from time to time.

About sixty days after the opening of the exposition; and apparently before his said business could have become successful, Rosenthal borrowed $1,000 from appellee, the Atlantic Trust and Deposit Co., executing his negotiable note therefor, payable sixty days after date, and to secure the payment of this note and of "any note or notes given in curtail or renewal of same," he conveyed his stock of china, glass-ware, etc., to Floyd Hughes, trustee; the language of the deed, so far as pertinent to the issue here, being as follows:

"The said party of the first part doth grant unto the said trustee the following property—to-wit: All that certain exhibit stock of china, glass-ware, pottery, and similar articles, now situate, lying, and being in that section of the Liberal Arts and Manufactures Building of the Jamestown Ter-Centennial Exposition, in the county of Norfolk, in the State of Virginia, assigned by the governors of said exposition company to the said Charles

M. Rosenthal in said building at said exposition, including all such articles as are now in said exhibit or that may be hereafter placed there during said exposition * * * And upon the further trust that the said grantor shall remain in quiet possession of the above granted and described property, and take the profits thereof to his own use, until default is made in the payment of the debt aforesaid," etc.

After this trust deed was executed Rosenthal continued to conduct his business as before, selling by himself, and with the assistance of his clerks, the articles going to make up his said exhibit, replacing some, at least, of the articles sold with others purchased, and in the course usually pursued in the ordinary conduct of any retail business. In November, 1907, before the close of the exposition, Rosenthal, who had been unsuccessful in his venture, absconded from the State, and Lazarus, Rosenfeld & Leyman proceeded to bring suit and to obtain an attachment on his assets, consisting only of his said exhibit, which had been greatly reduced in quantity and value. Other creditors of Rosenthal then proceeded to file an involuntary petition in bankruptcy against him, but these proceedings were dismissed, and need not be further referred to.

Lazarus, Rosenfeld & Leyman obtained final judgment on their attachment, which judgment they assigned to the appellant, Gray, who thereupon instituted this suit in equity for the collection of his said judgment, and to that end to have set aside as void in law the said deed of trust to Floyd Hughes, trustee.

Prior to the filing of the bill in this cause, the assets of Rosenthal were, by consent of parties interested, disposed of, and the net proceeds of their sale, amounting to $1,625.86, deposited in the National Bank of Commerce, in Norfolk city, to await a final adjudication of the rights of the parties interested therein. The court below denied the prayer of appellant's bill, and dismissed the same, and from the decree carrying out said ruling this appeal was taken.

It is the contention of appellees that, as "there is no allegation of fraudulent intent made in the bill, and no facts set out to show that this deed operates as a fraud upon the creditors of said Rosenthal," the bill is insufficient to support the relief prayed,

and, therefore, no other decree in the cause than that complained of could have been entered.

This contention proceeds, and erroneously, as we view the case, upon the theory that, as the bill does not allege fraudulent intent, no relief could be granted upon it, although the deed itself showed upon its face that the powers reserved to the grantor over the property conveyed were adequate to defeat its avowed purposes.

The gravamen of the averments in the bill is, not that the deed was made with fraudulent intent on the part of the grantor, with knowledge on the part of the trustee or beneficiary of such fraudulent intent, and was therefore void as to other creditors of the grantor, but that the deed, upon its face, is fraudulent and void *per se.* The issue presented is not one of fact, wherein all the facts requisite to constitute the fraud charged must be set out in the bill and proved, but a question of law, to be determined by judicial construction of the deed itself, which is exhibited with the bill as a part thereof.

To hold a mortgage or deed of trust fraudulent in law, it is not necessary to impute actual or intentional fraud to the grantor, the trustee, or, indeed, to any one concerned. *Catt, Trustee,* v. *Knabe & Co.,* 93 Va. 736, 26 S. E, 246.

The case made by the bill in this cause must stand or fall by that line of cases to which belong *Hughes, Effinger & Co.* v. *Eppling,* 93 Va. 424, 25 S. E. 105, and *Catt, Trustee,* v. *Knabe & Co., supra,* where the issue decided was whether or not the powers over the property reserved to the grantor in the conveyance were incompatible with the avowed purposes of the trust, and adequate to the defeat thereof. It is true that in the first-named of these cases the grantor was in the business of a retail merchant, but the principle of law upheld was that where a deed of trust, executed to secure the payment of a debt, or to indemnify the surety of the principal debtor, reserves to the grantor the right to remain in the possession and enjoyment of the property conveyed until default is made in the payment of the debt secured, where such a reservation is inconsistent with the purposes of the conveyance and adequate to defeat them, such a deed is fraudulent *per se.*

The opinion by Buchanan, J., after adverting to the fact that here was not only no provision in the deed that the grantor

was to account to the trustees for the proceeds of sales made by him while in possession of the trust property, but no recognition that such sales were to be for their benefit, and the terms of the trust excluded any such idea, and necessarily implied that he had the right to dispose of the goods in his business for his own benefit, and to continue to do so as long as the negotiable notes intended to be secured could be renewed, and the party secured was content not to require a sale, says: "The law does not authorize such agreements. A creditor, in securing himself, must be careful that the contract by which he is secured does not contain provisions which do not benefit him, but which benefit the debtor, and were so intended, and are prejudicial to other creditors. It does not allow the creditor to make use of his own debt for any other purpose than his own indemnity. When he goes beyond this, and puts into the contract provisions which have the effect of shielding his debtor, by allowing him to dispose of the trust subject for his own purposes, and by which other creditors are hindered and delayed in the collection of their debts, the contract cannot be upheld. The power retained was incompatible with the avowed purpose of the grantor to furnish indemnity to his creditor and endorser, and is fully adequate to the defeat of the provision of the deed of trust." Citing *Lang* v. *Lee*, 3 Rand. (24 Va.) 410, and *Addington* v. *Etheridge*, 12 Gratt. (33 Va.) 436, where it was held that similar reservations of power and control over the trust subject to the grantor renders his conveyance fraudulent *per se*, and void as to other creditors. Speaking of the two cases cited, Judge Buchanan further said: "The doctrine laid down in these cases has been uniformly recognized and followed by this court." Citing a large number of the cases referred to.

In *Catt, Trustee*, v. *Knabe & Co., supra*, the principle is fully recognized and followed, and because the deed in that case, conveying to a trustee real and personal property, consisting of buildings and furniture and appliances suitable for the conduct of a school, authorized the trustee to conduct a school for a period of eighteen months, and to that end to employ all necessary tutors and other agents, and to pay them out of the trust fund, preferring the salaries of such tutors and agents and the running expenses of the school to the creditors secured, it was considered

that such a reservation of power and control over the trust subject was incompatible with the purposes of the conveyance, and adequate to defeat its purposes, and the conveyance was held to be fraudulent *per se.*

The dissent in that case by Judges Riely and Buchanan was not because they were of opinion that the principle of law considered and approved did not apply in that class of cases, but because, in their opinion, the deed did not expressly charge the *corpus* with the debts that might be incurred by the trustee in continuing the school, and were doubtful as to whether the law would necessarily imply the charge from the language of the deed.

Among the cases relied on by the appellees here is *Norris* v. *Lake*, 12 Leigh (39 Va.) 516, 16 S. E. 663. In that case the court does say that fraud in such a case is never presumed, unless the terms of the instrument attacked preclude any other inference, and that fraud is not an irresistible inference from a provision in a deed of trust postponing a sale for a reasonable length of time and reserving the use of the property to the grantor in the meantime; but in the opinion by Lewis, P., stress is laid upon the fact that the deed in question did not reserve to the grantor, as in *Lang* v. *Lee*, and other cases, power of sale, or any other power incompatible with the avowed purposes of the trust.

In *Brockenbrough* v. *Brockenbrough*, 31 Gratt. (72 Va.) 580, the opinion by Burks, J., quotes from *Dance* v. *Seaman*, 11 Gratt. (52 Va.) 78, that "the presumption of law is in favor of honesty, and the court cannot presume fraud unless the terms of the instrument preclude any other inference"; but the opinion also says: "There is no doubt that the provisions of a mortgage or deed of trust may be of such a character as of themselves to furnish evidence sufficient to justify the inference of fraudulent intent. Such is the case where the grantor reserves a power over the conveyed property incompatible with the avowed purposes of the trust, adequate to the defeat thereof." The grantor, John W. Brockenbrough, executed the three deeds under consideration in that case, covering chiefly real estate, but in one of them, the one deemed of the most importance, in addition to the large amount of real estate described therein, certain personal property was conveyed, consisting for the most part of crops, stock of horses, mules, and

74

cattle. There was nothing in the main deed to show any power whatever in the grantor to dispose of the subject matter, and, while he was allowed to remain in possession of the real estate, together with the farming implements, horses, mules, and cattle that constituted the complement of the farm, and to have the use thereof, the language of the conveyance, reserving in the grantor possession and use of the property, admitted of no construction that authorized or could have resulted in the sale of the *corpus* itself; and the opinion of the court very plainly points out that the only effect of the reservations that could possibly have accrued to the benefit of the grantor was a mere postponement of the sale of the property.

The wise policy of the law and the distinction it makes between that class of cases in which the mortgage or deed of trust reserves to the grantor power over the property conveyed incompatible with the avowed purposes of the trust, adequate to the defeat thereof, and those cases in which the only effect of the reservations that could accrue to the grantor was a mere postponement of the sale of the property, the use and control of it until default in the payment of the debt secured, and reservations of like import, is clearly pointed out in *Catt, Trustee,* v. *Knabe & Co., supra.* In that case the effect of the court's ruling is that a deed of trust on personal property, regardless of whether or not it is a shifting stock of merchandise, containing reservations in favor of the grantor, or in favor of the trustee charged with the duty of executing the trust, which are sufficient to defeat the purposes of the trust, renders the deed void as to the creditors of the grantor.

In the case now in judgment the reservation in the deed in favor of the grantor is that he shall remain "in quiet and peaceable possession of the above granted and described property, and take the profits thereof to his own use, until default is made in the payment of the debt aforesaid," &c.; while the very nature of the property conveyed—"stock of china, glass-ware, and similar articles, now situate * * * constituting the exhibit of the said Charles M. Rosenthal in said building at said exposition"—would exclude any idea of profits to inure to the grantor other than such as he might realize from a sale or sales of the property, which was the construction put upon the reservation and

actually pursued by the grantor.   It will not do for the beneficiary in the deed to say that the sales made by the grantor were without its knowledge, and were made contrary to an agreement between him and the trustee or the beneficiary in the deed.   The question is, did the deed reserve to the grantor the power to make the sales, and thereby defeat the purposes of the deed?   In other words, were the agreements or conditions contained in the deed of trust of such a character that, if carried out, they would be sufficient to defeat the purposes of the deed, independent of what the intention of the parties might have been by reason of some extrinsic agreement?

As we view the language of the deed, in the light of the authorities to which we have adverted, such powers and control of the property conveyed were reserved to the grantor therein as were adequate to defeat the avowed purpose of the trust, and, therefore, the deed is fraudulent *per se.*

There is no merit in the final contention of appellees that because the property conveyed in the trust deed was "an exhibit," and not a stock of merchandise, the decisions of this and other courts, relied on by appellant in support of his contention that the deed is null and void because fraudulent in law upon its face, do not apply.   The deed calls the property conveyed both an *exhibit* and a *stock of goods,* and, whether it be called the one or the other, the grantor reserved to himself absolute control over the goods and the power to sell and dispose of them, which reservations were adequate to defeat the very purposes of the deed, and rendered it fraudulent *per se.*

It follows that we are of opinion that the deed of trust in question was fraudulent *per se,* and should have been declared null and void by the trial court, as to appellant and other creditors of the grantor who established their debts in the cause.   Therefore, the decree appealed from must be reversed, and the cause remanded, to be proceeded in in accordance with this opinion.

*Reversed.*