# Richmond.

## MASON MATHEWS AND C. T. THAYER, SURVIVING TRUSTEES v. W. C. BOND AND S. M. CROFT, TRUSTEE.

### *and*

## THE PEOPLES BANK OF COVINGTON v. PETERS MOUNTAIN LUMBER COMPANY AND S. M. CROFT, ET AL.

November 18, 1926.

1. MORTGAGES AND DEEDS OF TRUST—*Fraudulent and Voluntary Conveyances—Reservation to Grantor of the Power of Control and Disposition of the Property.*—A deed of trust executed by a debtor for the purpose of indemnifying certain named creditors, which reserves to the grantor a power of control and disposition inconsistent with the avowed purpose of the trust and adequate to defeat such purposes, is, by reason of such reservation, *per se* fraudulent and void as to creditors thereby postponed. Thus a deed reserving the right and power to dispose of all the property conveyed without requiring an accounting and imposing no restraint upon the grantor in regard to the use and enjoyment of the property and its income is void as to the other creditors of the grantor.

2. MORTGAGES AND DEEDS OF TRUST—*Fraudulent and Voluntary Conveyances—Reservation to Grantor of the Power of Control and Disposition of the Property—Case at Bar.*—In the instant case a lumber company purchased a certain saw mill and equipment, and executed a deed of trust to secure the purchase money on the property purchased and also on standing timber owned by it, and certain railroad ties and lumber. The lumber company retained possession of the property conveyed in the deed of trust and reserved the right to sell any part of the lumber and ties conveyed, agreeing to pay the grantee $10.00 per thousand feet for all lumber sold and $5.00 per thousand feet for all ties sold; and reserved the right to manufacture and sell the timber conveyed upon the same terms. There was no question but that the debt secured was a *bona fide* debt. The deed of trust was not executed to secure all the creditors of the grantor

Statement.

nor did it purport to convey all the property belonging to the grantor.

*Held:* That the deed of trust was not fraudulent and void as to other creditors of the grantor, nor did the "shifting stock of goods rule" apply.

3. Fraudulent and Voluntary Conveyances—*Retention of Possession by Grantor.*—It is well settled in Virginia that where a deed of trust is given to secure *bona fide* creditors, the fact that the grantor retains possession of the property conveyed to the trustee does not of itself impute fraud to the transaction.

4. Mortgages and Deeds of Trust—*Fraudulent and Voluntary Conveyances—Reservation to Grantor of the Power of Control and Disposition of the Property—Operating Mortgages—Case at Bar.*—A lumber company purchased a mill and its equipment and executed a deed of trust on the same and on certain standing timber, ties and lumber, to secure the purchase money. The debt secured was payable two years after date unless the grantor defaulted in payments, failed to insure the property, or failed to pay the taxes thereon. It also provided for an accounting each month for the proceeds derived from the sale of lumber and ties by the grantor and in the event of a failure upon the part of the grantor so to do then the entire debt became due and payable. No power or revocation was reserved by the grantor. The grantor had no power to sell the standing timber as such but must convert the same into lumber. The proceeds from operation were carefully guarded against consumption by the operation, in that ten dollars per thousand feet was to be paid from the sale of lumber, and five dollars per thousand feet from the proceeds of the ties.

*Held:* That the deed of trust was, in strict legal terminology, an operating mortgage and no harm was done to subsequent creditors by it.

5. Fraudulent and Voluntary Conveyances—*Presumption of Fraud.*— In construing instruments alleged to be fraudulent, courts are not impelled by the idea that fraud exists. Upon the contrary, "the presumption of law is in favor of honesty, and the court cannot presume fraud unless the terms of the instrument preclude any other inference."

Appeal from a decree of the Circuit Court of Alleghany county. Decree for complainants. Petitioners appeal.

*Affirmed.*

The opinion states the case.

*J. M. Perry, O. B. Harvey* and *R. C. Stokes*, for the appellants.

*Revercomb & Revercomb; Koontz, Hurlbut & Revercomb;* and *Timberlake & Nelson*, for the appellees.

CAMPBELL, J., delivered the opinion of the court.

These two chancery causes, which were argued together, present the same question of law.

The record displays the following facts:

The Peters Mountain Lumber Company, a corporation engaged in the manufacture of lumber, being indebted to William C. Bond in the sum of $22,495.36, for a certain saw mill and engines and equipment and steel railroad track purchased of him, and desiring to secure the payment of the amount due, on April 2, 1921, executed the deed of trust involved in this litigation, naming S. M. Croft as trustee.

The debt secured was payable April 2, 1923, and the property conveyed consisted of all standing timber owned by it on some eleven hundred acres of land in Alleghany county, railroad ties and lumber, together with the property purchased from Bond. The deed of trust contains the following provisions: "It is agreed by and between the parties to this deed of trust and the beneficiary that the party of the first part may sell all or any part of the lumber and ties herein conveyed as the party of the first part may determine and shall render to the said trustee and to the said W. C. Bond a statement on the first of each month showing the number of feet of lumber sold the previous month, and to whom sold, and shall pay to

said W. C. Bond ten dollars ($10.00) per thousand feet for all lumber sold and heretofore manufactured, and five dollars ($5.00) per thousand feet for all ties sold, except such as have been heretofore sold the Harmount Tie Company. The said party of the first part shall have the right to saw and manufacture the timber herein conveyed into lumber and ties, and may sell the same by paying to said W. C. Bond five dollars ($5.00) per thousand feet for every thousand feet of lumber sold hereafter manufactured, and by paying to W. C. Bond five dollars ($5.00) per thousand feet for every thousand feet of ties cut from said timber and sold. The said amounts paid for lumber and ties to be applied to the payment of the debt and interest herein secured. The sales of lumber cut from the timber herein conveyed shall be rendered monthly to the said trustee and to the said W. C. Bond as herein provided as to the lumber already sawed and herein conveyed. It is agreed by and between the parties hereto that the said party of the first part shall remain in possession of said property and may use said mills, engines and trucks and railroads and steel rails, and shall take proper care of same and shall keep all the insurable property herein conveyed insured against loss by fire, in some responsible Fire Insurance Company, for the benefit of W. C. Bond as his interest may appear to the amount of at least $26,000.00. The said party of the first part further agrees to keep all taxes and other public charges against said property paid. And agrees to pay said debts and interest when same becomes due and payable on the second day of April, 1923, to W. C. Bond or his assigns or personal representatives. And it is further agreed that the party of the first part shall have the right at any time before said debt

becomes due to pay the same by paying the interest up to the time of such payment. If the said party of the first part fails to pay W. C. Bond the $10.00 per thousand feet for all lumber sold as herein provided or $5.00 per thousand feet for all lumber and ties sold as herein provided, then if such default shall continue for a period of thirty days the said party of the first part shall not make sale of any more of the lumber or ties herein conveyed, and upon such default the trustee shall take charge of all said lumber and ties and make sale of same at the market price and shall out of the proceeds derived therefrom pay to W. C. Bond $10.00 per thousand feet for the lumber now on hand and $5.00 per thousand feet for all ties hereafter sawed from the timber herein conveyed. It is further agreed that the said party of the first part shall not remove any of said property, except such lumber and ties as herein provided, from Alleghany county, Virginia, without the written consent of W. C. Bond. It is further agreed that if the said party shall be in default in insuring said property as herein provided; or in paying all taxes and public charges against said property as herein provided; or if said party of the first part shall be in default in paying said debt and interest when the same becomes due and payable, then the said W. C. Bond or his personal representative shall have the right to have the property and rights herein conveyed sold and the proceeds applied to the payments of said debt. And if the said W. C. Bond or his personal representative shall have the right to have said property sold under the terms of this deed of trust, then the trustee when directed so to do by said W. C. Bond or his personal representative shall make the sale of the said property and rights herein conveyed, at such place as the said

W. C. Bond may direct, in Alleghany county, Virginia,
at public auction, to the highest bidder for cash as
to the amount of said debt, after giving such notice
of the time, terms and place of sale, for at least thirty
days, as the said trustee may deem sufficient."

The corporation becoming insolvent and unable to
meet the conditions of the deed of trust in regard to
the payments required by it, and failing to keep the
property insured, on the first December rules, 1922,
Bond, the beneficiary, and Croft, the trustee, filed their
bill in chancery, seeking the aid of the court in admin-
istering the assets of the corporation.

The appellants filed their petitions in this suit
alleging that the corporation was indebted to the
petitioners in the sums of $28,000 and $5,000, respec-
tively; that the alleged indebtedness was covered by
attachments levied on the property of the corporation
and that they were entitled to share in the proceeds
of the property sold by the receivers, for the reason
that the deed of trust executed by the corporation was
*per se* fraudulent in law and void, in that it reserved
to the grantor the power and right of disposition,
which reservation was incompatible with the vowed
purposes and objects of the trust.

The appellees demurred to the petitions, alleging as
grounds of demurrer "that the said deed of trust
which is sought to be set aside by said petitioners is
not *per se*, as a matter of law, fraudulent on its face."

The court, presided over by Hon. Richard S. Ker
in place of Judge Anderson, sustained the demurrer
and held the deed of trust valid in all respects.

The sole question involved in this litigation concerns
the validity or invalidity of the deed of trust.

[1] This court in a long line of cases has consistently
held that a deed of trust executed by a debtor for the

purpose of indemnifying certain named creditors, which reserves to the grantor a power of control and disposition inconsistent with the avowed purposes of the trust and adequate to defeat such purposes, is, by reason of such reservation, *per se* fraudulent and void as to creditors thereby postponed.   These cases so holding, and relied upon in part by appellants, are: *Consolidated Tramway Co.* v. *Germania Bank*, 121 Va. 331, 93 S. E. 572; *Gray* v. *Atlantic Trust Co.*, 113 Va. 580, 75 S. E. 226; *Catt* v. *Knabe, etc., Mfg. Co.*, 93 Va. 736, 26 S. E. 246; *Saunders* v. *Waggoner*, 82 Va. 316; *Wray* v. *Davenport*, 79 Va. 19; *McCormick* v. *Atkinson*, 78 Va. 8; *Perry* v. *Shenandoah Nat'l Bank*, 27 Gratt. (68 Va.) 755; *Addington* v. *Etheridge*, 12 Gratt. (53 Va.) 436; *Sheppard* v. *Turpin*, 3 Gratt. (44 Va.) 373; *Lang* v. *Lee*, 3 Rand. (24 Va.) 410.

In the majority of these cases the court was dealing with matters which came within the provisions of section 5184 (Code 1919).   In all of them it is patent that the reservation in favor of the grantor was not merely inconsistent with the evident purpose of the trust, but adequate to defeat in its entirety the instrument as a security.   The deed dealt with in each of the cases cited reserved the right and power to dispose of all the property conveyed, without requiring an accounting, and imposed no restraint upon the grantor in regard to the use and enjoyment of the property and its income.

[2] We do not think these cases in point.   Nor is the principle enunciated in the decisions known as the "Shifting Stock of Goods" cases applicable to this case.

Neither in the briefs nor in the oral argument is the contention made that the debt secured by the deed of trust was not a *bona fide* debt.   In fact, it

must be conceded that the relation between the grantor and beneficiary was that of debtor and creditor, a relation brought about by the sale of valuable property.

The deed of trust was not executed to secure all creditors of the grantor, nor did it purport to convey all the property belonging to the grantor.

[3] The fact that the property was left in the possession of the grantor is of little import. It is well settled in Virginia that where a deed of trust is given to secure *bona fide* creditors, the fact that the grantor retains possession of the property conveyed to the trustee does not of itself impute fraud to the transaction. *Sipe* v. *Farman*, 26 Gratt. (67 Va.) 563.

[4] In construing the deed of trust, the provision under attack must be read in connection with all the other provisions of the instrument. In reading the deed it is to be observed that the debt secured was payable two years after date, unless the grantor defaulted in the payments, failed to insure the property, or failed to pay taxes thereon. It also provided for an accounting each month of the proceeds derived from the sale of lumber and ties, and in the event of a failure upon the part of the grantor so to do, then the entire debt should become due and payable. No power of revocation was reserved by the grantor.

Upon the happening of any of the contingencies mentioned the trustee was empowered to take charge of all the lumber and ties and make sale of the same.

A noticeable feature of the trust deed, which distinguishes it from most cases, is that the grantor had no power to sell the standing timber, as such, but must convert the same into lumber. It is hard to conceive how the business of the corporation could be successfully conducted, unless granted the leeway of

operation of its plant.    And again, it is to be observed that the proceeds *from* operation were carefully guarded against consumption *by* the operation, in that ten dollars per thousand feet was to be paid from the sale of lumber, and five dollars per thousand feet from the proceeds of the ties.

The deed of trust is, in strict legal terminology, an operating mortgage.    By its execution the grantor was afforded a source of credit, while the beneficiary was afforded a security for his debt.    No harm was done to subsequent creditors as they necessarily extended credit to the grantor only on the value of the equity of redemption and not upon the *corpus* of the estate. The law afforded them a means by which they could enforce their debts, subject only to the terms of sale contained in the trust deed.

[5] In construing instruments alleged to be fraudulent, courts are not impelled by the idea that fraud exists.    Upon the contrary; "The presumption of law is in favor of honesty, and the court cannot presume fraud unless the terms of the instrument preclude any other inference."    *Brockenbrough* v. *Brockenbrough*, 31 Gratt. (72 Va.) 580.

A case analogous to the instant case in principle is *Didier* v. *Patterson*, 93 Va. 534, 25 S. E. 661.    It appears that Patterson, who had large contracts for public improvements with the city of Roanoke, executed an assignment of all moneys due and to become due under those contracts to the Fidelity Loan and Trust Company of Roanoke.    This assignment was intended to secure all of his existing indebtedness to the bank and also future loans or advances, and it was provided in it that he should have the right to check on any balance or surplus to his credit in bank after he was charged up with the amount of his in-

debtedness which was then payable. · It was insisted
that this right vitiated the assignment. Judge Riely,
delivering the opinion of the court, said:

"The case under consideration, as disclosed by the
evidence, does not violate this principle. It was not
an assignment by a debtor in failing circumstances
for the benefit of his creditors generally, nor an as-
signment of all his estate; but simply an assignment
of a chose in action—of the money due and to become
due for work Patterson had contracted to perform—for
the express purpose of raising the necessary funds to
carry it on and meet his liabilities. There was no
reservation of benefit in the sense contemplated by
the principle of law referred to. The evidence dis-
closes no purpose to shield from his creditors any of
the money to which the Fidelity Loan and Trust
Company would not become entitled under the agree-
ment, or to prevent it from being subjected to the
payment of any debts he might owe or incur. It
was only the reservation of the balance of the monthly
collection from the city which might remain after
discharging the amount then due and payable to the
bank. , Such a provision, or reservation, if it may be
so called, in no wise defeated or tended to defeat the
purpose of the assignment, or to withdraw the security
from its operation. The bank would receive payment
of its debt, and the balance would be liable for any
other debts of the assignor—to be reached, according
to its nature, either by execution or bill in equity, as
well as be subject to his check for his own use. No
party to the assignment falsely claimed or pretended
that the assignment was anything more than a security
for existing indebtedness, and for loans or advances
to be made in the future; nor concealed, or attempted
to conceal, its real purpose and character; nor was

there shown any agreement or purpose to conceal such surplus from creditors.

"Actual fraud not being shown, the result is the same as if it had been provided in the assignment in terms that the moneys due upon the monthly estimates should be applied by the assignee, when collected, to the payment of the indebtedness of Patterson to it, and the balance, if any, paid over to him. The effect of such provision would only be what the law would imply without it. The surplus would equally go to him under the law without such provision as well as with it. Such a stipulation does not vitiate the conveyance or assignment. *Harvey* v. *Anderson, et al.* (Va.), 24 S. E. 914; *Dance* v. *Seaman*, 11 Gratt. (52 Va.) 778; *Skipwith's Ex'r* v. *Cunningham*, 8 Leigh (35 Va.) 271 [31 Am. Dec. 642]; Bump on Fraud. Con. (4th ed.), section 383; and Wait on Fraud. Con. (2d ed.), section 327."

A case in point is *Acadian Coal & Lumber Co.* v. *Brooks Run Lumber Co.*, 88 W. Va. 595, 107 S. E. 422. In that case a mortgage was given to secure an indebtedness which was payable in future installments. The deed contained the following provision: "The mortgagor shall retain the possession and control of its business, being that of the manufacture and sale of lumber at its place of business at Prestonia, W. Va.; and shall in all respects proceed with the manufacture and sale of timber or of other property in the course of its business without interference on account of this mortgage and with full power to pass legal title to any and all property and lumber that it may sell in the progress of its business, but the said mortgagor shall until the said debt shall have been paid retain on sticks on its lumber yards at least as much as 500,000 feet of lumber."

Judge Poffenbarger, delivering the opinion of the court, said: "Considered in the light of the character of the property it conveyed, the instrument does not fall within the class of those held to be fraudulent on their face, because so drawn as to enable the debtor to appropriate the property to his own use or to protect him in the possession and enjoyment thereof, to the detriment of his creditors."

The case of *Barthell, Trustee* v. *Thomas Hall Lumber Company*, has been called to our attention. This case was tried in the Sixth Judicial Circuit of Tennessee, before Mr. Justice Sanford, prior to his elevation to the Supreme Court of the United States. The opinion seems not to have been published in the Federal Reporter, but in the draft to which we have access it is held that, though the deed of trust empowered the Hall Lumber Company to operate the mill and dispose of the lumber, it was not fraudulent upon its face, but was a valid security for the debt due.

From whatever angle we may view the deed of trust under consideration, there is nothing on the face of it that indicates that it was given to hinder, delay or defraud the creditors of the Peters Mountain Lumber Company.

All of the equities are with the beneficiary. All that the subsequent creditors could hope for was to share in any proceeds derived from the sale of the equity of redemption.

We are of the opinion that there is no error in the two decrees complained of, and the same will be affirmed.

*Affirmed.*