## PARKER v. MEYER et al.

### In re FEDERAL PIANO CORPORATION.

Circuit Court of Appeals, Fourth Circuit. January 14, 1930.

No. 2901.

Ellsworth Wiltshire, of Richmond, Va., for appellant.

O. M. Stumpf, of Richmond, Va., and John J. Wicker, Jr., of Richmond, Va. (Wallerstein, Goode & Evans, of Richmond, Va., on the brief), for appellees.

Before WADDILL and PARKER, Circuit Judges, and McDOWELL, District Judge.

PER CURIAM. We regard the decision of the trial court as sound, and we hereby adopt the opinion of the trial judge as the opinion of this court. That opinion is as follows:

"The referee has determined that the assignment under which Meyer claims is void and of no effect, and my first impression was to sustain this finding. A careful review, however, of the evidence and of the cases impels me to reach a different conclusion.

"The adjudication was April 2, 1928. For several years prior thereto, the bankrupt had been engaged in selling pianos, radios, and other musical instruments at retail mostly on leases or conditional sales contracts, retaining title until the property was paid for. In November, 1926, to secure Meyer for his indorsement of certain negotiable notes made for its accommodation and discounted at the American National Bank of Richmond, the bankrupt assigned to Meyer certain conditional sale contracts and leases. The agreement was that the bankrupt should collect the installments falling due on the contracts from time to time and curtail the notes at 60-day periods by amounts equal to such collections; or, as stated by Meyer in his evidence, 'My agreement with the Federal Piano Corporation was that as the amount of money was collected from these leases, this note should be curtailed every sixty days by that amount and interest paid.' He also testified that this was done consistently up to the time of bankruptcy, and applied, not only to the original assignments, but to subsequent assignments which were given to secure additional accommodation indorsements made by him for the benefit of the bankrupt. The evidence also shows that the leases themselves were delivered to the bank when the transactions were made and continued to be held by the bank.

"Briefly stated, the transaction was this: The bankrupt needed money, which it was unable to get upon its own paper. It therefore secured Meyer as an accommodation indorser, as a result of which the bank discounted its paper. As security for this indorsement, the bankrupt turned over to the bank for the benefit of Meyer leases and conditional contracts at least equal to the amount of the discounted note, and these were to be held by the bank until the note was paid, and the agreement between Meyer and the bankrupt was that the bankrupt should collect the installments due on the lease and contracts, and account for the same by curtailing the note to that extent every 60 days.

"There is no suggestion that the transaction was fraudulent in fact. The trustee insists, however, that this transaction was fraudulent in law because the bankrupt was

permitted to continue to collect the installments due and to mingle the same with its own funds without accountability until the end of each of the 60-day periods, and the referee has held with him, and both rely upon Benedict v. Ratner, 268 U. S. 353, 45 S. Ct. 566, 567, 69 L. Ed. 991. I have examined that case carefully, with the result that I find it dependent upon wholly different facts from the case at bar. In that case there was an assignment of accounts receivable as in this. The receivables were to be collected by the company. Ratner was given the right, at any time, to demand a full disclosure of the business and financial conditions; to require that all amounts collected be applied in payment of his loans; and to enforce the assignment although no loan had matured. But until he did so, the company was not required to apply any of the collections to the repayment of Ratner's loan. It was not required to replace accounts collected by other collateral of equal value. It was not required to account in any way to Ratner. It was at liberty to use the proceeds of all accounts collected as it might see fit. The existence of the assignment was to be kept secret.' The difference between those facts and those which are shown in this case are obvious. Here the bankrupt was required to apply all collections made within every 60-day period to the curtailment of the note, and, while it is true it had the use of the money collected between the date of collection and maturity of the notes, it was as of the latter date required to pay it over in payment of the curtail, and as between the two every dollar collected was earmarked for the specific purpose mentioned. The difference is perhaps more plainly shown by what did in fact occur. In the Ratner Case the amounts advanced aggregated $30,000. Between May and September the company had collected on these accounts $150,000, all of which it had applied to purposes other than the payment of Ratner's loan. In the case at bar every dollar, so far as the evidence shows, collected over a period of two years on account, or the equivalent of every dollar so collected, was regularly applied, in accordance with the agreement, to the curtailment of the various notes which Meyer had become responsible for by indorsement. In the recent case of Mathews v. Bond, 146 Va. 158, 135 S. E. 689, a lumber company was indebted to Bond, and, in order to secure its debt, executed a deed of trust on its standing timber, but with the right to manufacture the lumber and sell the same and pay Bond a fixed sum per thousand feet for all lumber sold, an accounting to be had each 30 days. It was there urged that, because possession was left with the grantor with the right to sell the property and to receive the proceeds with an agreement to account for the same only at particular intervals, the deed was fraudulent. The Supreme Court of Appeals of Virginia rejected this view, and held the deed valid. The comparatively recent case of Chapman v. Emerson, 8 F.(2d) 353, was a much stronger case for the trustee in bankruptcy there than is this, and yet it was held by the Court of Appeals of this Circuit, speaking through Judge Rose, that the assignment was valid.

"The test in all such cases seems to be whether the assignor retains unfettered dominion over nominally assigned accounts and their proceeds. If so, the assignment is fraudulent. Otherwise it is not.

"I cannot say the evidence here shows such 'unfettered dominion' over the accounts or their proceeds, and I find myself therefore obliged to reject the conclusions of the referee and reverse the order entered by him."

Affirmed.