## FLASH and others *v.* WILKERSON and others.

*(Circuit Court, W. D. Tennessee. May 22, 1884.)*

FRAUDULENT CONVEYANCE — RIGHTS OF CREDITORS IN EQUITY — SECURITY FOR ADVANCES BY FRAUDULENT VENDEE—EFFECT OF ATTACHMENT.

In setting aside a fraudulent conveyance the cardinal rule of equity is to restore the creditors to what they have lost by the transaction, and their rights are satisfied when they are placed *in s'atu quo.* The court does not seek to improve their condition by imposing forfeitures and penalties for the sake of punishing the fraud. Where, therefore, the goods are immediately attached, taken from the vendee before they have been lost, damaged, or depreciated in his hands, and have been sold by the court at a small advance over the price paid by the vendee, the money being in court for distribution, the court did not, on the facts of the case, charge the vendee with any additional sum to increase the value, and allowed the fund to stand as a security to the vendee for a *bona fide* debt paid by the debtor out of the price given by the vendee.

In Equity.

Wilkerson, a retail grocery merchant at Jackson, Tennessee, suddenly and secretly sold his stock of groceries to Hopper, a speculator, for 75 cents of the invoice price, the purchaser paying in cash $6,100, of which the debtor paid to one Bond the sum of $3,000, and to one Smith the sum of $2,250, they being alleged creditors for borrowed money, and residing at Jackson, thereby preferring them to his commercial creditors, of whom he purchased the goods, and to whom he owed about $11,000. The day after the sale the creditors filed this bill, attached the goods, which were sold by the receiver for a few hundred dollars advance over the Hopper purchase, and the fund is in court to abide the determination of this case. It was conceded on the proof that the Bond debt was an honest debt for borrowed money used in the business, but the Smith debt was attacked as one fraudulently fabricated to enable the debtor to conceal the money. The court stopped the concluding argument before it was entirely ended, and directed a decree for the plaintiffs.

*McCorry & Bond,* for plaintiffs.

*Hayes & Bullock,* for Hopper.

*Caruthers & Mallony* and *Campbell & Brown,* for Wilkerson.

HAMMOND, J., *(orally.)* The further consideration of this case would serve no useful purpose. The adjudications on the subject of fraudulent conveyances are so numerous, variable, and conflicting that no court can undertake the task of deciding any case according to strict precedents. The most it can hope to do is to gather together the principles that should control its action and apply them to the case in hand, leaving each case to be governed by its own peculiar circumstances. The doctrines that govern a court of equity are not difficult to understand, and are mostly familiar to all courts,—the only trouble being to properly apply them to each case.

That this was, on the facts proven, a fraudulent conveyance there can be no doubt, and the sale will be set aside. It is not necessary

to review the proof. The case has been thoroughly argued, and every fact and circumstance commented on, by counsel on either side, and it is enough to say that the court quite agrees with the view the plaintiffs take of the facts.

The Tennessee act of April 6, 1881, c. 121, forbidding preferences in assignments for the benefit of creditors as construed by the supreme court in *Ordway* v. *Montgomery*, 10 Lea, 514, does not seem to have any application to this case, and may be disregarded in determining it. It does not abolish preferences except in the manner denounced by the act, and the debtor had a right, therefore, to prefer his home creditors by a sale for the purpose. But in doing this he must act honestly and fairly by his other creditors. He cannot defraud them to make preferences by a hostile and ruinous sacrifice of his goods. Mere inadequacy will not avoid the sale, but it must be open, and there must be a fair and reasonable consideration. Here the sale was secretly conducted, the stock, at invoice prices, was taken on Sunday and Christmas, so as to conceal the transaction from those who might have stopped the sale by diligence of action to collect their debts by execution, and a comparatively new and fresh stock of goods, bought for the purpose of making a tempting offer, were sold for 25 per cent. off the invoice prices, without carriage added, to a speculator in such transactions, who borrowed the money at heavy interest to take the bargain offered him, without inquiring into the failing debtor's purposes or financial condition.

Hopper either knew of Wilkerson's fraudulent purpose to sacrifice the goods, or might have known it from the circumstances. Any reasonable man could have seen that the purpose was to keep off the creditors, by hindering and delaying their executions through a sudden sale in bulk at an inadequate price. Actual knowledge is not necessary. Mr. District Judge CALDWELL makes this plain in *Singer* v. *Jacobs*, 11 FED. REP. 559. Hopper cannot escape by any pretense of ignorance. But it does not follow from this that a court of equity will charge him with the full invoice value of the goods. The court would undoubtedly do so if the creditors had permitted him to keep them, and they were suing for their value, or if they had lost the goods by the fraudulent transaction, or if they had depreciated in his hands; but none of these things occurred. Almost immediately—the very next day—the creditors attached the goods, took them from him, and sold them at public sale for a slight advance on the price he gave. How have they been injured, then, by the sale to Hopper? If they had then and there had their judgments and executions, they could have done no more than they did do by the attachment, namely, sell the goods by process of law. True, the earliest and most diligent creditors might have secured preferences to themselves in the order of their action, and prevented the exercise by Wilkerson of his right to prefer Mrs. Bond; but a court of equity is not concerned about repairing such losses as these. Equality is equity here, and all the

court will do is to restore the creditors to what they have lost, by placing them, as far as possible, *in statu quo*. This they have done by their own action in suing out the attachment, and seizing and selling the very goods they could have seized and sold by judgments and executions, if they had not been hindered and delayed by the fraudulent conveyance.

The court does not proceed upon the theory of punishing the fraud, nor attempt to improve the situation of creditors by imposing penalties on the fraudulent vendee for his fraud. It is not concerned about protecting the fraudulent vendee, but it deals justly by him, and is satisfied by making the creditors whole as nearly as may be. The case of *Clements* v. *Moore*, 6 Wall. 299, furnishes our courts with a very satisfactory guide to the pure and just principle on which we deal with transactions like this, and we need not go through the mazes of adjudications to find precedents. The distinctions between fraud in fact and fraud in law are not satisfactory, and are more metaphysical or philosophical than practical in their use. Fraud is fraud in all cases, and while one case may be more flagrant than another, and a court inflicting punishment may consider the differences, a court of equity in all cases moulds its decrees on principles of equitable treatment to all concerned.

Now, Hopper, if the goods had remained with him, might have worked out his own salvation, and had in hand the greater value to answer this demand upon him for it. But he was not allowed by the creditors to have this benefit of his bargain, or to work out its possible benefits to them. He is shown by the proof to be abundantly solvent, and the creditors, by allowing him to remain in possession, could have received full value for the goods. But they chose to take away the goods, and apply them in their own way, just as they would have been able to do by judgment and execution if Hopper had never interfered with them. It seems inequitable, under the circumstances, to allow them to make a better sale to Hopper than they have made themselves, when they have chosen to set aside the sale to him and take the property. Each case must depend on its own circumstances, and all I hold now is that, on the facts of this case, the creditors cannot claim, in a court of equity, any greater value than they have demonstrated by their own sale the goods would have brought to them under execution if they had not been delayed. This bill is, in fact, a mere process of execution.

The same considerations precisely impel the court to allow Hopper to be reimbursed for the payment made out of his money to Mrs. Bond. Why should his money be taken to pay Wilkerson's just debt, except on the notion of punishing him for the fraud? Wilkerson had a right to prefer his creditor, and that much of his just debts has been paid by the sale. Mrs. Bond, by judgment and execution, might have accomplished the same result, or by taking that amount of the goods in payment, and the other creditors would not be injured.

There is no reason why a court of equity, acting on the rules suggested, should invade Hopper's money-box and take $3,000 to pay Wilkerson's debt because he attempted to speculate in bargains offered him by Wilkerson, the speculation and all benefits from it being defeated by the prompt action of the creditors. Hopper did not conceal anything, or misappropriate the goods, or obstruct the creditors in getting them. He intended to carry on the business, and was doing so openly and regularly when his purchase was challenged and the goods seized. There is no element of active conduct to help Wilkerson secure benefits for himself or to impair the value of the property. He bought at a bargain, and paid the money for no other purpose except to make all he could by the bargain. He lost it, but there seems no reason for compelling him to pay Wilkerson's just debts and thereby improve the condition of other creditors who have got all they ever would have had if Hopper had not been so greedy for bargains.

The Smith debt, on the proof here, seems to be fabricated. It is not satisfactorily proved to have ever been an honest debt. If it were, the burden is on Hopper to show it, and he has failed. He cannot be allowed for that payment.

Let a decree be drawn as the court has indicated. The defendants must pay the costs.