### In re LIVINGSTON & TURK.

(Circuit Court of Appeals, Second Circuit. May 12, 1913.)

No. 207.

1. BANKRUPTCY (§ 116*) — ASSETS — TRANSFER OF GOODS OF BANKRUPT — VALIDITY.

Bankrupts were in need of money, which was furnished by petitioners on an agreement by which the bankrupts sold to petitioners certain accounts for goods sold, and all their right, title, and interest in and to the same and to the merchandise the sale of which created the accounts, with full power to reclaim the merchandise; the agreement also providing that, should the customers reject, return, or refuse to accept any of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the goods, it should be optional with petitioners to surrender the merchandise refused or returned on receiving payment therefor in cash, or at the petitioners' election to take from any balance they may have on hand the amount of such merchandise, the agreement giving to petitioners the accounts and the right to collect all sums due thereon, and if any goods were returned to receive and dispose of same and apply the proceeds to the debt. *Held*, that such agreement was not a pledge or mortgage of the goods in case they were returned, but a transfer of the title to petitioners, and that on return of goods title was not vested in the bankrupts, and hence petitioners were entitled, as against the bankrupts' receiver, to the proceeds of the accounts or goods covered by the transfer.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 116.*]

**2.** CARRIERS (§ 51*)—"BILL OF LADING"—EFFECT.

A nonnegotiable "bill of lading" is not evidence of title, but is merely a receipt and contract of carriage.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 148, 149; Dec. Dig. § 51.*

For other definitions, see Words and Phrases, vol. 1, pp. 790-795.]

Lacombe, Circuit Judge, dissenting.

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of bankruptcy proceedings of Livingston & Turk. On petition by Max Erstein to revise and on appeal from an order denying motion of L. Erstein & Bro. for an order directing the bankrupts' receiver to turn over to said firm certain merchandise, or its value in money, on the security of which said firm had advanced money to the bankrupts. Reversed.

Bershad & Gossett and Ralph Wolf, all of New York City, for appellants.

Eugene L. Bondy, of New York City, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The agreement between L. Erstein & Bro., the bankers, and Livingston & Turk, the bankrupts, is clear and explicit. By its terms the bankrupts bargained, sold and assigned to the bankers the accounts and all their right, title and interest in and to the same and to the merchandise, the sale of which created the accounts, with full power to reclaim the merchandise. The agreement also provided that should the customers reject, return or refuse to accept any of the merchandise mentioned in the said accounts, that it should be optional with the bankers to surrender the merchandise refused or returned, upon receiving payment therefor in cash, or, if they so elect, to deduct from any balance they may have on hand the amount of said merchandise. The agreement, in brief, gives to the bankers, who have advanced on goods sold by the bankrupts, the accounts and the right to collect all sums due thereon and, if the bankrupts' customer returns the goods so that the accounts are no longer security, then, and in that event, the bankers have a right to receive and dispose of said returned merchandise and apply the proceeds on

their debt. The accounts being no longer available security, it was clearly the intention of the bankrupts to substitute the returned goods, so that the bankers would be secure in any event. The receiver has in his possession the merchandise, or the avails thereof, amounting to $742.50, which, by the terms of the agreement, belongs to the bankers. If the sale had gone through, the bankers would have been paid the amount advanced and they are now entitled to the goods on which their advance was made and which, having been returned, belong to them and not to the bankrupts or their receiver. The creditors are not injured, as the bankrupts received the full amount advanced by the bankers.

If the purchaser had paid for the goods and had rightfully returned a part thereof, it is plain that the bankrupts would have been compelled to pay back the amount received for the returned goods.

[1, 2] In our opinion the agreement was not intended to create and did not create a pledge or mortgage of the goods in case they were returned. Its purpose was not to create a lien but to give the bankers title to the goods. Such an agreement can be and ought to be enforced in equity. The goods did not belong to the bankrupts when they were returned. Title was not re-vested in them. The clause in the assignment giving the bankers an option to surrender the goods on certain terms implies that they had a right to keep them. The bill of lading, not being negotiable, was no evidence of title, but merely a receipt and contract of carriage. If the bankers knowingly permitted the returned goods to remain in the possession and under the control of the bankrupts and thus enabled them to get false credit or to commit frauds, the bankers would not be entitled to the relief demanded, but there is no proof to sustain such a contention. In no view of the case did the goods belong to the bankrupts; if unlawfully returned they belonged to the purchaser, who is liable notwithstanding the return, and if rightfully returned, they belonged to the bankers.

The order is reversed.

LACOMBE, Circuit Judge. I am unable to concur with the majority opinion, because it seems to me that the document relied on could not have conveyed title to any of the goods to the bankers, since at the time it was executed the bankrupts had no title to convey. Title to the goods had already passed by sale and delivery to the bankrupts' customers.

I therefore dissent.