**LADD et al. v. PERRY.**

Circuit Court of Appeals, Seventh Circuit.
October 12, 1928.

No. 3942.

Walter T. Gunn, of Danville, Ill., for appellants.

L. W. Reese, of Taylorville, Ill., and John E. Hogan, of Chicago, Ill., for appellee.

Before ALSCHULER, EVAN A. EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. The action was in chancery by the trustee in bankruptcy of John Ladd, Sr., to set aside a conveyance of his farm to his son John Ladd, Jr., on the ground that it was in fraud of creditors and effected a preference in favor of the son, who was a creditor of the bankrupt.

Ladd, Sr., was adjudged a bankrupt February 22, 1924, on an involuntary petition filed March 6, 1923. In 1918, and for many years before, he owned a 160-acre farm in Christian county, Ill., which he actively farmed until 1912. From that year to 1917 it was operated in partnership by his two sons, Ladd, Jr., and Harry, as tenants. Beginning with the spring of 1918, Ladd, Jr., ran it alone under a verbal lease or arrangement with his father, which was to run until March, 1923.

Up to 1919 there was but one residence on the farm, which Ladd, Jr., and his family occupied with his parents. In that year

the parents vacated the house and remained away until another one was built on the farm. In February, 1921, the new house was completed, whereupon the son and his family went into it, and the parents returned to the old house. The son made other improvements on the farm, such as fencing and tiling, and contends that out of his own funds he paid for the house under a verbal understanding with his father that he would deed the farm to the son. No terms for such conveyance appear to have been agreed upon. The son continued in the occupancy of the house and farm, the parents remaining in the old house.

The father became heavily · involved, largely through undertaking to help a son-in-law in the purchase of a large farm at a high price, incurring indebtedness to banks which, with the subsequent decline in value of farm property, unquestionably rendered him insolvent. Under date of December 19, 1922, about 2½ months prior to the filing of the petition in bankruptcy, the father (his wife joining) made a deed of the farm to the son for the expressed consideration of $1; the son assuming to pay a mortgage of about $8,000, to which the farm was then subject.

On behalf of the son it is claimed that the deed was made pursuant to a sale of the property to him the prior October, whereby the son made a cash payment of $500, and gave his father notes for $3,000, and his mother notes for same amount, and that he then canceled a note of the father · to the son for the amount of $5,132, which had been running since 1917, aggregating, with interest, about $7,000. The son contends, also, that he had made substantial payments on the mortgage, and had paid taxes on the farm. It is further contended for the son that he was not aware of his father's insolvency, and that he did not take the conveyance with the purpose of being preferred in any claim he had against his father's estate. He insists that the actual transaction of purchase occurred more than four months prior to the bankruptcy, and cannot now be set aside as preferential. ·

The master heard many hundreds of pages of evidence, and made a report finding the· main contentions against the son, and recommending cancellation of the conveyance. The court confirmed the report of the master, decreed that the conveyance be set aside, and that the son be required to account for rent of the farm, but made no order respecting the claims of the son against the estate, beyond relegating him

to the bankruptcy court for the establishment of his claims against the father, and for whatever lien or priority he might there establish. ·

Upon the fundamental issue of the father's insolvency and the son's knowledge thereof, and the preference to the son effected by the conveyance to him, we feel constrained to conclude that we would not be warranted in disturbing the decree, based, as it is, upon the finding of the master, who saw and heard the witnesses thereon. There is controversy as to the competency of certain evidence, as against the son, of declarations made by the father to others out of the son's hearing. We are satisfied, however, that this evidence may be entirely excluded, and still the conclusion is warranted that the son, in taking the conveyance, knew his father was insolvent, and knowingly effected a preference to himself to the extent of a large indebtedness of the father to the son, and the conveyance was therefore properly ordered to be set aside. But this does not dispose of the question of the right of the son to be reimbursed for his outlays upon the property as a condition for the setting aside of the conveyance. If, under the very peculiar and unusual circumstances of this case, the son built a new house and made other improvements on the farm, ·upon the faith of an arrangement whereby the father would eventually deed him the farm, while it may be that such arrangement was far too indefinite to compel specific performance, we see no reason why in equity it is not sufficiently definite to permit the son to hold the house and farm until he is in some way reimbursed for his outlay. If this is so, is it equitable to take the farm from him, and compel him to resort to a claim in the bankruptcy court for such relief as the court of chancery has the power to award? We do not think this would be equitable, but rather that the same court which assumes to set aside the conveyance should fix such terms as are equitable for setting it aside. These should be ascertained, as nearly as may be, and the conveyance set aside upon such conditions as are just and equitable.

The amount that was paid for the house and improvements is left by the evidence in most confused and uncertain state. Perhaps it can be further clarified. But it does not follow that the amount actually paid is what should be awarded. He may have paid too much. It might be an amount which is more than the entire property is worth at the time of adjudication of the parties'

rights. It should be such an amount, or rather such proportion, as the improvements are shown to have enhanced the value of the farm at the time of final decree in the cause. But, whatever it is, it should, if established, be awarded the son as a condition of setting aside the conveyance.

■ It should also be ascertained, with reasonable definiteness, how much, if anything, he paid after the conveyance for principal and interest on the outstanding mortgage on the farm, and this should likewise be refunded to him as a condition of the reconveyance. If, upon receiving the conveyance, he paid his father a cash sum of $500, this should likewise be returned to him. The notes for $3,000 which the son claims to have given the father as part consideration for the conveyance, and which notes passed to the trustee in bankruptcy as part of the father's estate, should likewise, as a condition of cancellation, be ordered canceled and returned to the son.

■■ The notes for $3,000, alleged by the son to have been given to his mother for part consideration of the conveyance, cannot be definitely dealt with unless the mother is made a party to the bill. This should be done; and if, upon hearing, it is concluded that there are such notes, and that they should be delivered up and canceled, it would doubtless be with condition that the mother be restored to whatever rights, such as dower and homestead, she may have had in the farm just prior to her joining in the deed to the son.

■ If, upon the accounting, it should appear that the father has claims against the son which should be applied in reduction of whatever is found to be due the son on account of such improvements or payments by him, they may be applied accordingly in reduction of such claims of the son.

■■ Respecting the note for $5,132 from the father to the son, this, if established, should be ordered delivered to the son, or restored by decree of court, in case it has become lost or destroyed, and the son be given reasonable time, following the entry of final decree in this cause, for presenting to the trustee in bankruptcy such note, and any other claim against the bankrupt, not adjudicated in this suit, for consideration and disposition by the bankruptcy court.

■ The son shall account for the reasonable rents and profits of the farm from the date of the deed, but as against such rents and profits accruing prior to the filing of the petition in bankruptcy, there should be set off any indebtedness shown against the bankrupt father in favor of the son. The cause must be, and it hereby is, remanded for further proceedings substantially in accordance with these suggestions, and the foregoing suggestions are intended to facilitate the further hearing and disposition of the cause in the event it is not otherwise disposed of.

The record discloses one of those complicated situations arising out of a long course of dealings between closely related persons, who kept no reliable accounts—indeed persons evidently incompetent to keep such accounts; and it is sought to reach conclusions from a vast amount of figures and memoranda which may or may not have bearing on the controversy. It is manifest that accurate results are quite improbable, if not impossible, and that an amicable adjustment would, in all probability, prove ultimately profitable to all the interests involved, and reflect credit upon the good sense of parties and counsel who will bring it about.