38 F.2d 40 (1930)
In re BERNARD & KATZ, Inc.
KNOWLES
v.
RITTER et al.
No. 149.
Circuit Court of Appeals, Second Circuit.
February 3, 1930.
*41 *42 C. Edward Benoit, of New York City (Julius J. Abeson, of New York City, of counsel), for appellant.
Lesser Bros. and Nathaniel Choloney, all of New York City (William Lesser, of New York City, of counsel), for appellees.
Before L. HAND, SWAN, and MACK, Circuit Judges.
SWAN, Circuit Judge (after stating the facts as above).
The trustee's first contention is that the assignments were invalid to the extent of $5,500, because there was no "present consideration" therefor, within the meaning of section 67d of the Bankruptcy Act (11 USCA § 107(d). It was the practice of the parties, in computing the amount to be advanced upon the accounts assigned as collateral for such advance, to appraise the accounts at 92 per cent. of their face and to advance 80 per cent. of such appraised value. The accounts were thus appraised because the bankrupt's customers were entitled to an 8 per cent. discount for prompt payment. Only to the extent of some $400 did the customers whose accounts had been assigned take advantage of this discount, while 8 per cent. of the gross amount of `assigned accounts amounted to $5,900. Hence it is claimed that the lender received $5,500 of accounts which the trustee calls "excessive security," and for which, he argues, no present consideration was given. The contention seems to be that section 67d forbids taking an excessive margin of security. This is a complete misconstruction of that section. The sum advanced by the lender is a present *43 consideration for the assignment of accounts, whatever their value. Of course, the lender may take more security than just enough to cover the advance; for the surplus, if he realizes more than enough to satisfy the debt, he will have to account at the proper time.
Each collateral note permitted the lender to hold any surplus of security as collateral for any subsequent loan which might be made. This the trustee contends is also forbidden by section 67d. No authorities are cited in support of this construction. Here, again, in our opinion, counsel misconceives the purpose of this section, which is not to destroy, but to save, liens whose validity might otherwise be thought doubtful. See In re International Raw Material Corporation, 22 F.(2d) 920, 924 (C. C. A. 2); Security Mortgage Co. v. Powers, 278 U. S. 149, 156, 49 S. Ct. 84, 73 L. Ed. 236; Remington, Bankruptcy (3d Ed.) § 1944. The words "present consideration only" are used in contradistinction to past consideration. When the parties agree in good faith that a lien presently created shall stand as security for future advances, and such advances are thereafter actually made in good faith before the bankruptcy of the borrower, we see no reason to deny effect to the agreement. In re Locust Bldg. Co., 299 F.(2d) 756, 769 (C. C. A. 2). The future advance, when made, becomes a present consideration; it increases the borrower's assets by as much as the enlargement of the lien decreases them.
The 2 per cent. commission, taken as a discount at the time of the loan, was permissible in addition to interest in the case of a corporate borrower, the usury laws not being applicable to corporations. In re International Raw Material Corporation, supra. So far as this discount increased the margin of security, what we have already said disposes of the matter, as it does also of the contention regarding the 20 per cent. margin of security.
The assignments are also attacked as fraudulent transfers under section 67e of the Bankruptcy Act (11 USCA § 107(e). The referee and District Court found no evidence of fraud or of unlawful preference. We should have to be well satisfied that they were wrong before we reversed this finding. In re M. J. Hoey & Co., 19 F.(2d) 764, 765 (C. C. A. 2). Instead, we see no reason at all to disagree with their conclusion. No doubt a lender, taking security for a present loan, may make himself privy to a fraudulent conveyance if he knows that his advances are to be made away with, or so used as to deprive creditors of the benefits intended to be secured by the Bankruptcy Act. Dean v. Davis, 242 U. S. 438, 37 S. Ct. 130, 61 L. Ed. 419. But there is not the slightest proof that the borrower was engaged in such a scheme. So far as appears, every dollar borrowed may have been legitimately used in the business. Knowledge of the borrower's insolvency, if insolvency at the dates of the loans were to be assumed, and knowledge thereof imputed to the lender, would be entirely irrelevant to the present issue.
Paragraph 4 of the several collateral notes provided that, if merchandise should be returned by customers whose accounts had been assigned, the borrower "will receive the same in trust for the assignee, and hold the same for such disposal as it may be advised by the said assignee herein." The trustee urges that the lien thus attempted to be created upon returned merchandise was void for lack of compliance with the requirements of section 45 of the New York Personal Property Law (Consol. Laws N. Y. c. 41), or section 230 of the New York Lien Law (Consol. Laws N. Y. c. 33), and that under the doctrine of void in part, void in toto, the assignments of accounts are wholly vitiated. Assuming for the moment that the lien upon the returned merchandise was void for lack of recording, this of itself does not invalidate the lien on the accounts. It would, if there had been fraud, Brown v. Leo, 12 F.(2d) 350 (C. C. A. 2); but not when the invalidity is due merely to a failure to record the instrument as a chattel mortgage. A lien good as to part of the assigned property without record will not fall because it is bad as to part without record. Chemung Canal Bank v. Payne, 164 N. Y. 252, 58 N. E. 101; Pacific State Bank v. Coats, 205 F. 618, Ann. Cas. 1913E, 846 (C. C. A. 9).
The trustee in bankruptcy attempts to show that the "fraud," which taints transactions when the borrower retains the privilege of disposition of the mortgaged goods, was present here. The lender testified that he never gave instructions for disposal of returned merchandise; that "they were replaced with new accounts." Apparently the practice was that the borrower reported lists of returns, and substituted new accounts therefor, not specifically, but by assigning in connection with a new loan accounts of greater aggregate value than would have been demanded on the basis of a 20 per cent. margin of security for the new loan. From this it is argued that the borrower had complete disposition *44 of the returns. But we do not think the proof goes so far. The most that can be inferred is that the lender was content to let the borrower dispose of the returns, if he substituted therefor new accounts. There is nothing to prove that the borrower did not abide by the terms of the collateral note and hold the returned merchandise in trust until new accounts were substituted. The proof falls short of showing that the borrower was permitted to use the returns without accountability, or that in fact he did so use them. We cannot assume the borrower to have been faithless to his trust. Neither Bernard nor Katz was called to testify, and Ritter expressly denied knowledge of any such faithlessness. The borrower's privilege of disposition of returned goods was conditioned upon substituting new accounts; therefore, the borrower did not reserve unfettered dominion over the returned goods, and "fraud," such as vitiated the transaction in Brown v. Leo, was not present. See Benedict v. Ratner, 268 U. S. 353, 364, 45 S. Ct. 566, 69 L. Ed. 991; Burrowes v. Nimocks, 35 F.(2d) 152, 158 (C. C. A. 4).
For the same reason the doctrine of Benedict v. Ratner cannot be extended to invalidate the assignments. The borrower reserved no power to collect the accounts and use their proceeds; nor could it lawfully dispose of the returned merchandise except upon substitution of other security. It was a straight case of assignment, the borrower to keep his hands off all the property assigned, except as allowed by the lender to substitute new security for merchandise returned.
There remains the question, assumed in the previous discussion, of the invalidity of the lien upon returned merchandise for lack of compliance with statutory requirements. Section 45 of the Personal Property Law (Consol. Laws N. Y. c. 41) has nothing to do with the case. As said in Heyman v. Kevorkian, 193 App. Div. 859, 861, 184 N. Y. S. 783, 785, this section is "an extension of the Lien Law in favor of factors" who loan on merchandise. See, also, Utica Trust & Deposit Co. v. Decker, 244 N. Y. 340, 347, 155 N. E. 665. It contemplates the making of a loan on the security of merchandise of which the borrower will retain possession. It does not apply to an assignment of accounts as security. In re Worth Lighting & Fixture Co., 292 F. 769, 771 (D. C. S. D. N. Y.). Nor, in our opinion, does the fact that, as an incident to the assignment of accounts, the borrower has agreed to hold returned merchandise in trust for the assignees; bring the transaction within the purview of this section.
Sections 230 and 230-a of New York Lien Law (Consol. Laws N. Y. c. 33) require filing of "every mortgage or conveyance intended to operate as a mortgage" of goods and chattels or "upon a stock of merchandise in bulk or any part thereof." The trustee in bankruptcy argues that the agreement to hold in trust the returned merchandise amounted to a mortgage or conveyance intended to operate as a mortgage. The lender, on the other hand, contends that "the assignees did not claim a lien but asserted title to the returned merchandise." We cannot comprehend what such an assertion means. Clearly the "trust" was for purposes of security, just as was the assignment of accounts. It cannot be supposed that the trust was to continue after the loan was paid, or that, if the lender obtained the returned goods, he would not have to account for them just as he would for an assigned account. Any "title" which he acquired under the borrower's agreement to hold in trust was necessarily a security title. It seems clear, therefore, that if any "title" passed the "conveyance was intended to operate as a mortgage." Hence it required filing. If the agreement to hold in trust be deemed not a mortgage, but merely an agreement to pledge returned merchandise, it would fail for lack of delivery of possession. In either view, the rights of the trustee in bankruptcy are superior to those of the lender with respect to the returned merchandise in the bankrupt's possession at the date of bankruptcy. In re Gerstman, 157 F. 549 (C. C. A. 2); In re Packard Press, 3 F.(2d) 232 (C. C. A. 2). The transaction cannot be brought within the exception of "trust receipts." In re James, Inc., 30 F.(2d) 555 (C. C. A. 2).
So far as the returned merchandise is concerned, there was an attempt to create by agreement a pledge lien or chattel mortgage in favor of the lender without delivery of possession of the merchandise or compliance with the chattel mortgage statute. Such an agreement is good as between the parties, though void as against the borrower's trustee in bankruptcy. The assignment of accounts in substitution for returned merchandise might perhaps be subject to attack (though this we need not, and do not, now decide) as voidable preferences, but not otherwise. They cannot be avoided as preferences for the referee, and the District Court found that there was no evidence of unlawful preference. There was neither proof that the bankrupt was insolvent when the substituted accounts *45 were assigned, nor that the lender had reason to believe the bankrupt insolvent. The assignments of substituted accounts must therefore be sustained. But the situation is different with respect to the returned merchandise which came into the hands of the receiver. On this the lender had no valid lien. Consequently, the decree must be modified to the extent of granting the trustee in bankruptcy recovery of the proceeds of the dresses turned over to the lender for sale without prejudice to the trustee's rights. The amount involved is $275 and interest from the date of sale.
It must be admitted that this result is contrary to In re Livingston & Turk, 205 F. 364 (C. C. A. 2). There it was held, by a divided court, that a similar agreement with regard to returned merchandise did not create a pledge or mortgage of the goods returned, but gave the bankers "title to the goods." We are unable to follow this reasoning. So far as we can ascertain, the case has been cited only twice: In re Arista Hat Co., 32 F.(2d) 388 (D. C. S. D. N. Y.), where, of course, the District Court followed it; and In re Rogers, 298 F. 987 (D. C. Mass.), where it was distinguished. In re Shulman, 206 F. 129 (D. C. E. D. Pa.), seems to be squarely opposed to it. We think the decision of the majority in the Livingston & Turk Case cannot be supported, and should be overruled.
The decree is modified, as above indicated, and, so modified, is affirmed. The appellant may recover one-half of his costs in this court.