**IRVING TRUST CO. v. FINANCE SERVICE CO.**

No. 226.

Circuit Court of Appeals, Second Circuit.

Feb. 6, 1933.

Haight, Smith, Griffin & Deming, of New York City (Stanley W. Schaefer, of New York City, of counsel), for appellant.

Ernst, Gale, Bernays & Falk, of New York City (Murray C. Bernays and Abraham Friedman, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is a suit brought by a trustee in bankruptcy to set aside as fraudulent conveyances seven assignments of accounts made by the bankrupt before petition filed. The facts were as follows: The bankrupt was a dealer in furniture and needed money in its business; the defendant was a money lender,

lending upon the security of customers' accounts. It lent the bankrupt about thirty thousand dollars at various times, taking as security assignments of its accounts, without notifying the customers. The bankrupt was allowed to collect, and to deposit the money in its general bank account, along with any other proceeds of its business. The notes given by the bankrupt were so figured as to equal about sixty per cent. of the collections which would be made upon the assigned accounts before the notes fell due, so that if customers paid regularly, the bankrupt could meet its debts and always have about forty per cent. of its collections available for general use. However, the parties made no effort to segregate any part of the collections, and the bankrupt was free to use the whole, if it chose, paying the notes from any source when they fell due. For example, it could properly use the earlier collections from the accounts assigned, making up the deficit by accumulating the later collections, or it might use all and pay from other sources. Although the defendant had power to send an auditor to examine the bankrupt's books, none was ever sent. At the time of all the loans the bankrupt was solvent; it used fifteen thousand dollars of the sums lent to pay its creditors; it repaid from sources undisclosed thirteen thousand dollars of the amounts borrowed, no part of which the plaintiff claimed. The judge held the case to be within the doctrine of Benedict v. Ratner, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 991, and set aside the assignments of all the unpaid accounts. The defendant makes three objections: That the Uniform Fraudulent Conveyance Act has repealed the doctrine of Benedict v. Ratner, supra, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 991; that it does not in any case apply to the facts at bar; that the debts paid by the bankrupt out of the money lent should be offset against any recovery.

▉ The first point is ruled by our decision in Lee v. State Bank, 54 F.(2d) 518, which the defendant frankly asks us to overrule. We see no reason as yet to do so, though we must of course follow the decision of the Court of Appeals of New York, if that court takes the other view in Foreman v. Jacques Construction Co., which is now before it. The Uniform Fraudulent Conveyance Act (sections 270–281, of the New York Debtor and Creditor Law [Consol. Laws, c. 12]) divides fraudulent conveyances into two classes; those defined in sections 273 and 274, in which intent is not an element, and those in sections 275 and 276, in which it is. The defendant insists that the doctrine of Benedict

v. Ratner, supra, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 991, depends upon an imputed intent, and must fall, since sections 273 and 274 certainly do not cover it. If so, it would necessarily follow that a chattel mortgage, in which the mortgagor retained power of disposition would also be valid, because Benedict v. Ratner was avowedly an extension of that doctrine to choses in action. When that case was before us, In re Hub Carpet Co. (C. C. A.) 282 F. 12, we assumed that the vice of such arrangements lay in the ostensible ownership reserved to the grantor, and for that reason we refused to include choses in action. The Supreme Court thought otherwise, and treated accounts as only an example of a fraud, inevitably involved in any such power, apparently because of its repugnancy to the conveyance. The Court of Appeals of New York has never accepted the gloss—it has the last word—but, as things now stand, it is for us a part of the law of New York. Thus, to determine the effect of the new act, we must treat the case at bar precisely as though it were a chattel mortgage. Has the statute, for example, validated a mortgage of a stock of goods which the mortgagor is free to sell at his pleasure?

That situation is not one in which an intent is imputed to the grantor in order to implicate him in a fraud, like those covered by sections 273 and 274. Before the statute this had been a fiction necessary to bring him within the language of the Statute of Elizabeth, for a man might be insolvent, or have insufficient capital, and still not intend to deprive his creditors of their usual remedies; the fiction supplied the specific intent under the guise of a "conclusive presumption." But here the grantor in fact intended to reserve to himself the jus disponendi, and so for that matter did the grantee; no intent need be imputed, no fiction used. The only question open is whether the injury to the creditors falls within the term, "fraud." Certainly some instances, as for example in the case of a stock of miscellaneous merchandise, a reserved power may be so regarded; there at least the creditors can get a false assurance. But we are to assume, as we have said, that this is not the basis of the doctrine, and it really makes no difference what that basis is. For some reason the law disapproves of at once giving the grantor power to dispose of the goods, and allowing the grantee to take away from the creditors what the grantor may choose to leave. "Fraud" is not used as in an action in the case, or in a suit to set aside a conveyance; whatever trenches upon the creditors' remedies by means which the law

forbids is a fraud upon them, and while under section 276 the grantor must specifically intend to cut off the remedies by these means, when he does, he intends to defraud them. We adhere to our ruling in Lee v. State Bank, supra, 54 F.(2d) 518, but we will hold up our mandate until the decision of the Court of Appeals in the case now before it.

■ The facts at bar are within Benedict v. Ratner, supra, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 991. The defendant and the bankrupt both understood that the collections should be at the latter's free disposal. Not only is this shown by the fact that the bankrupt made no effort to segregate them, as the defendant knew, but the defendant expressly told it that its business would not be interfered with as long as it kept up its payments on the notes. These might be made from any of its property; there was no provision that the bank account should be kept large enough to cover the notes till they were met, or that corresponding amounts might be released only when they were paid with other money. As suggested above, it would have been entirely proper for the bankrupt to use the whole of the collections coming in during the earlier part of the period before due date, building up enough towards its end to meet its commitments, or indeed to use them all. In Parker v. Meyer, 37 F.(2d) 556, the Fourth circuit construed a somewhat similar contract otherwise. We are not sure that we should have reached the same result, but at most the question was one of the security intended, and the evidence apparently enough to persuade the court that the borrower was to "earmark" the collections. In Re Bernard & Katz, 38 F.(2d) 40 (C. C. A. 2), the borrower got no power over the accounts until he had substituted others as security.

The defendant's assurances in the general circular issued to prospective customers that borrowers would always have an equity available for their general uses, cannot be twisted into a condition that they should use no more. This language was merely an inducement to accept the generous terms offered, by which a surplus was always at hand, even if they laid by adequate reserves out of their collections; it did not affect to impound them for that purpose, and the borrowers would not violate the agreement if they used them as they pleased, though it might be imprudent for them to do so. How they should meet their obligations, what funds they might use, was left altogether to their pleasure, so long as they did in fact pay. This was typically the situation condemned in Benedict v. Ratner, supra, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 991.

■ The last question is whether the defendant may claim as a credit or offset against collections upon the accounts, so much of the borrowed money as the bankrupt used to pay its debts. It was stipulated that $15,000 was so used at a time when the bankrupt was solvent, and when therefore the payment was not a preference. In our first opinion we held this amount a proper deduction; we have had a reargument, and now conclude that we were wrong. In Clements v. Moore, 6 Wall. 299, 18 L. Ed. 786, it was indeed held that a fraudulent grantee who used the consideration to pay the grantor's debts might claim the amount so paid as a credit; but so far as we can find, that decision, though often cited, has never been made the basis of a similar ruling, except in Flash v. Wilkerson (C. C.) 20 F. 257. In Lynch v. Burt, 132 F. 417, 432 (C. C. A. 8), it was considered as no more than an instance of allowance made to an innocent grantee, though this was clearly erroneous. The accepted federal rule is quite the contrary; even though the guilty grantee discharges liens against the property, or improves it, he may claim no credit in the account. Milwaukee & M. T. Railroad Company v. Soutter, 13 Wall. 517, 20 L. Ed. 543; Burt v. Gotzian, 102 F. 937, 946, 947 (C. C. A. 8); Blank v. Aronson, 187 F. 241 (C. C. A. 8). (Ladd v. Perry, 28 F.(2d) 975 (C. C. A. 7), is not consistent with this doctrine.) However, this yields to the law of the state (Jackson v. Ludeling, 99 U. S. 513, 25 L. Ed. 460); and in New York the law seems to be that if a guilty grantee pays the grantor's debts, even though they were not secured, he may claim the deduction. Smith v. Wise, 132 N. Y. 172, 30 N. E. 229; Frank v. Von Bayer, 236 N. Y. 473, 141 N. E. 920. Cf. Empire Lighting Fixture Co. v. Practical Lighting Co., 20 F.(2d) 295 (C. C. A. 2). Payments to the grantor himself are not allowed. Frank v. Von Bayer, supra; Lowenstein v. Reikes, 60 F.(2d) 933 (C. C. A. 2).

The question being one of New York law, just as much as the fraudulent character of the conveyance itself, we should feel bound to allow the credit, if the case were that of a sale. It seems to us, however, that there is a critical difference between that and a mortgage. In the case of a straight sale, the grantee when he is privy to the fraud, has no claim for the consideration; the transaction is not regarded as rescinded, but as void. It is a harsh doctrine, which the courts of New York have apparently mollified to the extent we

have mentioned. Perhaps they would not, if the grantor was insolvent at the time, so that payment of his debts was a preference; but if not, the extreme penalty is not exacted of the grantee. But in the case of a mortgage, the debt remains, which the mortgagee may prove under the bankruptcy law (section 57g of the Act, 11 USCA § 93 (g); he is not stripped bare like a fraudulent grantee. This difference, in a situation which is confessedly to be decided by equitable considerations alone, appears to us to be enough, when the consequences of the opposite result are considered. To hold the mortgage valid pro tanto by the mere payment of the mortgagor's debts, gives it exactly the effect which it is the purpose of the statute to prevent. For a mortgage is a preference, lawful of course, but intended for nothing more. The payments might subrogate the mortgagee to the rights of the paid creditors, but that would not serve, since, as creditor, he is already in as good position as they. Were the debts so paid themselves secured, another question might arise, though under the federal decisions it would make no difference, as we have said. But when they are not, the result is by indirection to give just that force to the mortgage which the statute forbids. Moreover, if the defendant be right, we cannot see any escape from applying the same rule to an unrecorded mortgage. Indeed, the reason is stronger, for the mortgagee in such cases is innocent, though negligent. Yet in all the litigation which has arisen on that subject, it has never been suggested, as far as we can find, that an unrecorded mortgage is valid to the extent that the consideration has paid the mortgagor's debts. We think that our first ruling was wrong and that the credit is not allowable.

Decree affirmed.