216 F.2d 165
 W. S. WALKER, Trustee in Bankruptcy of the Estate of Harvey J. Hall, Jr., and Garner Hall, doing business as Farmers Exchange and Hatchery, Bankrupts, Appellant,
v.
CLINTON STATE BANK, Appellee.
 No. 15044.
 United States Court of Appeals Eighth Circuit.
 November 4, 1954.
 
 D. D. Panich, Little Rock, Ark., for appellant.
 Alston Jennings, Little Rock, Ark. (Opie Rogers, Clinton, Ark., on the brief), for appellee.
 Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.
 THOMAS, Circuit Judge.
 
 
 1
 This is a controversy in a bankruptcy proceeding, and the rights of the parties are to be determined by the application of equitable principles unless such principles are inconsistent with the Bankruptcy Act, 11 U.S.C.A. § 1 et seq.; Securities and Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 455, 60 S.Ct. 1044, 84 L.Ed. 1293.
 
 
 2
 Plaintiff-appellant, W. S. Walker, is the trustee in bankruptcy of the estate of Harvey J. Hall, Jr., and Garner Hall, individually and as co-partners doing business as Farmers Exchange and Hatchery, bankrupts. The involuntary petition was filed December 6, 1951; they were adjudged bankrupts January 8, 1952, and appellant was appointed trustee January 22, 1952.
 
 
 3
 The defendant-appellee, Clinton State Bank, is a banking institution chartered by the State of Arkansas to conduct such business at the town of Clinton, Arkansas.
 
 
 4
 The complaint, as amended, charged that within four months preceding the filing of the petition in bankruptcy, while insolvent the Halls, individually and as co-partners doing business as Farmers Exchange and Hatchery, transferred to the bank sums of money aggregating $39,595.77; and that during the same period the defendant bank charged to the bankrupts' account in the bank the sums of $696.80 and $436.30; and that in each instance the defendant knew that the bankrupts were insolvent and that the transfers would result in a preference.
 
 
 5
 Defendants admitted the allegations of the complaint except the charge that the transfer of the funds from the bankrupts in the bank was made on account of an antecedent debt and without a present fair value and that the transfers involved would result in a preference; and the defendant alleged that it was at all times since December 5, 1950, a secured creditor of the bankrupts, and that all its dealings with the bankrupts since December 5, 1950, were related to a transaction in which it occupied the position of a secured creditor.
 
 
 6
 The case was tried to the court without a jury. Thereafter the court filed a memorandum decision, made findings of fact and conclusions of law and entered judgment for defendant bank and dismissed the complaint at plaintiff's costs. This appeal followed.
 
 
 7
 The contentions of the parties apply particularly to the inferences to be drawn from the evidence and the application of the law thereto.
 
 
 8
 The bankrupts, Harry J. Hall, Jr., and Garner Hall, are brothers. They were engaged in business at Clinton, Arkansas, under the name of Farmers Exchange and Hatchery. They purchased baby chicks and sold them to various growers who executed negotiable notes for the purchase price including an estimated amount of feed and medication to be furnished by the Halls in order to raise the chicks to a marketable stage. Chattel mortgages covering the chicks were executed by the growers securing the notes thus given. The mortgages were filed of record in the proper county.
 
 
 9
 In order to carry on the industry on a substantial scale it became necessary for Hall Brothers to obtain aid in financing. On December 5, 1950, the defendant bank agreed to make a loan or to extend a line of credit to Hall Brothers in the principal sum of $20,071, to be secured by the so-called "chicken notes" executed by the growers, at a rate of not less than two for one; that is, any loan made by the bank to Hall Brothers would be secured by chicken notes having a face value of at least double the amount of the loan. On the date this contract was made, December 5, 1950, there were outstanding unsecured loans of the bank to Hall Brothers in the amount of $9,000. When the line of credit in the amount of $20,071 was extended the sum of $9,000 together with interest in the amount of $91.50 was deducted, so that Hall Brothers received a net credit in the sum of $10,979.50. There were pledged to, and deposited with the bank, 22 chicken notes payable to Hall Brothers and endorsed by them in the total amount of $40,142, which was double the credit of $10,979 and the $9,000 loan plus interest in the sum of $91.50. Thus the bank became a secured creditor of Hall Brothers in the amount of $20,000 secured by chicken notes of approximately $40,000. Then as the chicks matured and became ready for market Hall Brothers arranged for their sale and for payment to the bank and the return by the bank of the notes of the particular grower whose chickens were to be sold.
 
 
 10
 In settling with the bank after the sale of the chickens of any particular grower the bank delivered to Hall Brothers the note of the grower and the chattel mortgage securing the payment and Hall Brothers in substitution for such note and chattel mortgage delivered to the bank the note and mortgage of another grower. By this means the security given the bank was maintained for the indebtedness secured.
 
 
 11
 The appellant's first proposition is that "A transfer of property as security which reserves to the transferrer the right to dispose of the same or to apply the proceeds thereof for his own use, is as to creditors fraudulent in law."
 
 
 12
 This is not a correct statement factually of what occurred, however. The court in considering this contention of the appellant found "That the bank did not receive any preferential payments seems too evident for serious consideration * * * all that the bank did between these dates [August 6, 1951, and December 6, 1951] was to release chicken notes held as security and accept substituted notes in their stead." The facts here are not comparable to the facts in Benedict v. Ratner, 268 U.S. 353, 360, 45 S.Ct. 566, 69 L.Ed. 991, relied upon by appellant. In the cited case the bankrupt, The Hub Carpet Company of New York, assigned its accounts receivable to one Ratner to secure a loan. The contract authorized Ratner to enforce the assignment at any time; but until he did so "* * * the company was not required to apply any of the collections to the repayment of Ratner's loan. It was not required to replace accounts collected by other collateral of equal value. It was not required to account in any way to Ratner. It was at liberty to use the proceeds of all accounts collected as it might see fit. The existence of the assignment was to be kept secret." 268 U.S. at page 360, 45 S.Ct. at page 567. Such an assignment was fraudulent and void under the laws of New York. Such was not the case here. The evidence in this case supports the finding of the trial court that by the transactions described the estate of the bankrupts was not depleted by the substitution of new chicken notes for the older ones. The appellant argues that the chicken notes were worthless when released by the bank to Hall Brothers. The court held that there is no persuasive evidence to support this argument. The notes were endorsed by Hall Brothers, and the makers of the notes were bound by their obligation until the notes were paid.
 
 
 13
 One of the alleged preferential payments made to the bank and sought to be recovered by the trustee was a check dated October 30, 1951, payable to "cash" in the amount of $2,976.22, apparently signed by Hall Brothers. The proceeds of the check were applied by the bank to the payment of two chicken notes and to an item of Swift & Company for which the bankrupts were liable to the bank.
 
 
 14
 The court did not find that the check was a valid check but found that whether valid or not the bank had the right to offset amounts on deposit with it to the account of Hall Brothers and that no preferential payment resulted from crediting the amount of the check to the indebtedness of Hall Brothers to the bank. In so holding the court did not err. 11 U.S.C.A. Bankruptcy, § 108; Studley v. Boylston National Bank, 229 U.S. 523, 33 S.Ct. 806, 57 L.Ed. 1313; Killoren v. First National Bank in St. Louis, 8 Cir., 127 F.2d 537; In re Field Heating & Ventilating Co., Inc., 7 Cir., 201 F.2d 316; Citizens' Nat. Bank of Gastonia, N. C., v. Lineberger, 4 Cir., 45 F.2d 522.
 
 
 15
 The appellant contends further that the court erred in sustaining the action of the bank in charging three other items against the bankrupt's account in the bank, one for $696.80, another for $436.30, and a third for $2,508.75, on the ground that there is no substantial evidence in the record to sustain said charges. We have examined the record carefully and find that there is substantial evidence to sustain the finding of the court in each instance. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., applies in each case. No good purpose could be served by reviewing the evidence in respect of each of these checks.
 
 
 16
 The judgment appealed from is affirmed.