W. S. WALKER, Trustee in Bankruptcy of the Estate of Harvey J. Hall, Jr., and Garner Hall, doing business as Farmers Exchange and Hatchery, Bankrupt, Appellant,

v.

The COMMERCIAL NATIONAL BANK OF LITTLE ROCK, Arkansas, Appellee.

No. 15054.

United States Court of Appeals Eighth Circuit.

Dec. 15, 1954.

D. D. Panich, Little Rock, Ark., for appellant.

A. E. Townsend, Jr., Little Rock, Ark. (Townsend & Townsend, Little Rock, Ark., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

THOMAS, Circuit Judge.

Appellee, The Commercial National Bank of Little Rock, Arkansas, filed proof of secured claim upon a note in the sum of $12,500, in the bankrupt estate of Harvey J. Hall, Jr., and Garner Hall, partners, doing business as Farmers Exchange and Hatchery. W. S. Walker, trustee, filed objections to the claim as a secured claim. The referee sustained the objections, denied the claim as a secured claim, but allowed it as an unsecured claim. The claimant appealed to the district court; the court reversed the referee, sustained the contention of the claimant bank, and the trustee has appealed.

The Hall Brothers in 1951 were engaged in furnishing baby chicks, feed and medication to various growers in Van Buren County and in adjacent counties in Arkansas. They purchased the baby chicks for the growers and estimated the amount of feed and medication necessary to raise the chickens for 90 days, which was the customary time to raise the chicks to broiler size. The growers executed and delivered to Hall Brothers promissory notes for the amount thus arrived at, secured by chattel mortgages on the chicks. The chattel mortgages were recorded in the proper counties. At the end of the 90-day peri-

od the chickens were sold and from the purchase price the amount due the Halls was deducted and the balance was paid to the growers as their compensation or profit.

In April, 1951, Hall Brothers made application to the appellee bank for a loan. After being furnished a financial statement of Hall Brothers and investigating their business, an agreement was reached by the terms of which appellee loaned Hall Brothers $40,000 for a period of 90 days, with the understanding that at the end of that period Hall Brothers were to make a payment of $25,000 and to execute a new 90-day note for the balance of $15,000. As security for these notes appellee required Hall Brothers to assign to it chicken growers' notes and mortgages on a two for one basis. The chattel mortgages were on chickens of different ages, some being only a few days old while others were near the marketable age of 90 days; and appellee agreed to allow Hall Brothers to substitute notes and mortgages on younger chickens for the notes and mortgages on chickens nearing the marketable age.

On July 23, 1951, the sum of $25,000 was paid on the $40,000 note, as agreed when the money was loaned the previous April. A new note for $15,000, payable in 90 days, was executed at the same time. The bank requested that its security be increased from two for one to two and one-half for one because of the different times at which the chickens would be ready for market. At the end of the 90-day period, October 23, 1951, the Halls made a payment of $2,500 on the $15,000 note executed on July 23, 1951. At that time the bank, at the request of the Halls, agreed that if an additional $2,500 were paid it would permit the balance of $10,000 to be paid November 22, 1951. The officers of the bank then had no knowledge of the insolvency of Hall Brothers, the bankrupts.

On October 31, 1951, the Halls sent to the bank nine notes secured by mortgages in the total amount of $14,950. These notes and mortgages reached the bank on November 1, 1951; the same day

that W. S. Walker, trustee, and appellant here, was appointed receiver for Hall Brothers by the Chancery Court of Van Buren County, Arkansas. These notes were sent to the appellee bank as substitutes for chicken notes and mortgages pledged as security for the payment of the balance of $12,500 on the $15,000 note dated July 23, 1951.

Appellant urges reversal of the judgment of the district court directing the referee to allow the claim of appellee as a secured claim for the following reasons:

1. Transfer of property as security which reserves to transferrer the right of disposal of same or application of proceeds for his own use is as to creditors fraudulent in law and void.

2. Substitution of good collateral disposed of under a pre-existing agreement whereby pledgee had no control of collateral so sold is void.

3. Appellee knew or should have known of the insolvency of bankrupts.

4. Findings of facts and conclusions of law of referee must be accepted on review under General Order 47, 11 U.S.C.A. following section 53, governing proceedings in bankruptcy unless clearly erroneous.

■ Appellant's first contention, namely, that "A transfer of property as security which reserves to the transferrer the right to dispose of the same or to apply the proceeds of sale to the security for his own use, is as to creditors fraudulent in law and void" is not applicable here. The same argument was urged by the same party in the case of Walker v. Clinton State Bank, 8 Cir., 216 F.2d 165. The facts in that case were practically identical with the facts in this case, and they are controlled by the same principles of law. Here, as in that case, the bankrupts and the bank had in the contract between them agreed that as and when it was necessary to sell the chickens of a particular grower whose chickens were 90 days old other growers' contracts, notes and mortgages covering younger chicks could be substituted for

the earlier notes; and we there held, as we must hold here, that such a contract is legal and not in violation of the bankruptcy laws. By the substitution of new chicken notes for the older ones the estate of the bankrupts was not depleted. No preferential payment resulted from the substitution of the new chicken notes for the earlier ones.

When appellee loaned Hall Brothers $40,000 in April, 1951, there was a fair consideration for the money thus loaned and a valid contract existed between Hall Brothers and the bank in respect of the security given the bank. The equitable rights of the appellee were not affected by the bankruptcy of the debtors. Securities and Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 455, 60 S.Ct. 1044, 84 L.Ed. 1293.

This is not a case of a fraudulent transfer of securities within the meaning of the bankruptcy law. It is a case involving the right to substitute one collateral security for another. See Coppard v. Martin, 5 Cir., 15 F.2d 743; Doggett v. Chelsea Trust Company, 1 Cir., 73 F.2d 614; In re Bernard & Katz, 2 Cir., 38 F.2d 40; Lindsay v. Rickenbacker, 5 Cir., 116 F.2d 29; In re Pusey, Maynes, Breish Co., 3 Cir., 122 F.2d 606.

In his brief in this court counsel for appellant trustee says: "Primarily, the case at bar is concerned with the last nine notes forwarded by the bankrupts on the afternoon of October 31, 1951, and received by the appellee on the morning of November 1, 1951. * * * There were no notes in substitution or otherwise delivered to the bankrupts, the receiver in chancery or the trustee in bankruptcy in lieu of the nine notes."

The parties agree that the nine notes in question total $14,950, and that appellee at that time held eleven other notes totaling $13,860. These eleven notes and the nine notes together total $28,810. Appellant sold the broilers covered by these 20 notes for $31,206.73. From this total sale price there should

be deducted the receiver's cost of feed and supplies amounting to $12,528.30 plus the grower's profits of $1,905.49, which leaves a balance of $16,727.94. Appellee contends, and the court held, that appellee's note for $12,500 with interest should have been paid out of this fund. Appellant, on the other hand, contends that there was a loss to the estate of $1,438.34 from the transactions.

These calculations are beside the point. The contract of the parties at the time $2,500 was paid on the $15,000 note was that appellee should retain sufficient unmatured notes and chattel mortgages to cover the balance of $12,500 at the ratio of 2½ to 1, that is 2½ times $12,500, or $31,250. Since the notes held by the bank amounted to but $28,-810, and the mortgaged chickens to secure the payment of these notes sold for $31,206.93, appellee was entitled to payment in full for the $12,500 note when the mortgaged chickens were sold by the receiver after deducting the growers' profits and the cost of feed. Since this balance amounted to $16,727.94, the court did not err.

There is nothing in the findings even of the referee, or in the evidence, to show fraud or collusion between the bankrupts and the bank with a view of creating a preferential transfer to the bank, and in the absence of such showing the right of the bank to the security cannot be denied. New York County Nat. Bank v. Massey, 192 U.S. 138, 24 S.Ct. 199, 48 L.Ed. 380.

Appellant contends that appellee knew that the bankrupt was insolvent when the last nine notes were delivered to the post office for transmission to the bank. This contention was urged upon the court, and after considering all the evidence, the court found:

"4. The last nine notes and mortgages substituted by the bankrupts, representing only a part of the claimant bank's security, were mailed to the bank on the afternoon of October 31, 1951, prior to the bank's learning or having

reasonable cause to believe that the bankrupts were insolvent."

The evidence fully supports this finding, and it is unnecessary to review here all of the evidence upon this point.

Finally, appellant trustee contends that under General Order 47 governing bankruptcy proceedings, the findings of fact and conclusions of law of the referee in bankruptcy must be accepted on review unless clearly erroneous, and that the findings of the referee in this case are not clearly erroneous.

That rule is not applicable here. The nine notes involved in this case were never in the possession of the trustee. In the case of Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 156, 89 L.Ed. 97, the Supreme Court say: "A bankruptcy court has the power to adjudicate summarily rights and claims to property which is in the actual or constructive possession of the court. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 629, 84 L.Ed. 876. If the property is not in the court's possession and a third person asserts a *bona fide* claim adverse to the receiver or trustee in bankruptcy, he has the right to have the merits of his claim adjudicated 'in suits of the ordinary character, with the rights and remedies incident thereto.'" Citing authorities. And see Thompson v. Dachner, 9 Cir., 214 F.2d 922.

It should be noted further that "The presumption of correctness of the referee's findings is not extended by General Order XLVII (see 11 U.S.C.A. foll. § 53) to his conclusions of law." 8 Remington on Bankruptcy, 5th ed., section 3719, page 38. See, also, Weisstein Bros. & Survol v. Laugharn, 9 Cir., 84 F.2d 419, 420.

A review of all the evidence is convincing that the court did not err in reversing the order of the referee and in directing the allowance of the claim of appellee. The nine notes involved in this appeal never came into the possession of appellant trustee, and no fraud having been connected with the transaction, the referee erred. The order of the court appealed from is accordingly

Affirmed.